Paul J. LACOSTE, Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent-Appellee.

No. 78–1597.

United States Court of Appeals, Fifth Circuit.

April 12, 1979.

---

Paul J. Lacoste, pro se.

George M. Papale, (Court Appointed), Gretna, La., for petitioner-appellant.

William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Brian G. Meissner, Asst. Dist. Atty., Harry F. Connick, Dist. Atty., Marvin Opotowsky, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before BROWN, Chief Judge, and AINSWORTH, Circuit Judges, and CAMPBELL *, District Judge.

PER CURIAM:

The District Court denied without a hearing the application of Paul Lacoste, a Louisiana state prisoner, for a writ of habeas corpus. We affirm.

On July 27, 1967, two men robbed a bank. One of the men, who wore a black hood

---

* District Judge from the Northern District of Illinois, sitting by designation.

which effectively masked his face, brandished a sawed-off shotgun during the robbery, and repeatedly and excitedly yelled "Hurry up!" "Hurry up!" to his cohort.

On the same day as the robbery, police arrested Newt Martin and the petitioner-appellant, Paul Lacoste. At a police line-up that evening, three of five witnesses identified Lacoste, on the basis of a voice identification, as the robber wearing the black hood and brandishing the shot-gun who had yelled "Hurry up!" Newt Martin was identified as the other robber. Also on the same evening, the police asked Lacoste about the money from the robbery. Before answering, Lacoste wanted to know how much time he might get for bank robbery and whether he could confer with Martin. He was allowed to talk to Martin, after which he was again asked about the money, to which he replied "I'll take my chances."

Martin pleaded guilty and was sentenced to 25 years, while Lacoste went to trial. At trial, one witness made an in-court identification of Lacoste's voice as the same voice heard in the bank, and two other witnesses testified that they had identified Lacoste by voice at the line-up. The incriminating statement "I'll take my chances" was also introduced. In addition, the jury heard in somewhat roundabout fashion the hearsay testimony of an informant that Lacoste and Martin had been planning a robbery. Lacoste was found guilty and sentenced to 50 years imprisonment.

Lacoste's conviction was affirmed by the Louisiana Supreme Court, *State v. Lacoste,* 1970, 256 La. 697, 237 So.2d 871. His state petition for habeas relief was denied, and the denial was affirmed, *State of Louisiana ex rel. Lacoste v. Phelps,* La., 332 So.2d 484 (mem. op.). Lacoste then brought this federal habeas petition, which was denied without a hearing. Lacoste appeals, raising

five grounds upon which he seeks to base habeas relief. We find all of his arguments to be of no avail.

## I.

Lacoste claims that his Eighth Amendment rights were violated by his 50-year sentence, because his codefendant, who pleaded guilty, received only a 25-year sentence. This argument is without merit. There is no substantial evidence that Lacoste was given 50 years because he exercised his right to jury trial. On petition for state habeas, the habeas judge (who had presided at the trial) stated that the 50-year sentence was not imposed as such a penalty. The discrepancy certainly can be justified on the ground that Lacoste was the gunman during the robbery, and by other factors properly within the sentencing judge's discretion. Finally, the 50 years was considerably less than the maximum available penalty (99 years).

## II.

The evidence adequately sustains the finding of the District Court that the line-up was not unduly suggestive. Further, since adversary proceedings had not yet been instituted at the time, Lacoste was not constitutionally entitled to have appointed counsel present at the line-up. *See Kirby v. Illinois,* 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.[1]

## III.

In his opening statement the prosecutor said Lacoste was arrested "based on * * * information received by the police." Detective Eugene Fields testified that two weeks before the robbery he was contacted by a reliable informant with whom he had worked on several occasions.

1. Lacoste requested counsel, but the only person available was an assistant district attorney, and he was asked to come to the line-up and advise Lacoste. Lacoste does not claim that this prosecutorial officer misadvised him, but that he was entitled to presence of appointed counsel unconnected with the prosecution. This argument, based on state law, is not cognizable on a federal habeas petition.

The defense objected, saying "I object, Your Honor, to that witness's answer relative to a confidential informant until it's established." In response the trial judge instructed the witness not to say anything that anyone had told him, then reiterated that the officer could not repeat anything anyone had told him because it would be hearsay evidence. After further colloquy between court and counsel, the Judge, for the third time, told Detective Fields not to reveal what he had been told by the informant.

Fields then testified to a second conversation with the informant (without revealing its content) and stated that after this conversation he called another officer by telephone. Objection was made that Detective Fields could not testify to what he did after talking to the informant unless it was established that the informant was reliable. A series of questions followed directed to reliability of the informant. A brief colloquy then ensued concerning whether the defense was entitled to the name of the informant. The following then occurred:

"BY MR. PERLIS [prosecutor]:

Q. Continue.

A. I called the Detective Bureau, and spoke to Lt. Fields, who is in command of the Robbery Division, and advised him that I had information that two white males, whose names were Newt Martin and Mickey Lacoste were planning to commit an armed robbery—

BY MR. MASINTER [defense counsel]:

Objection, Your Honor.

BY THE COURT:

Objection sustained. Do not say—

BY MR. MASINTER:

Your Honor, he's telling—

BY MR. MURRAY:

He's telling what he told Lt. Fields when he called. That's what he said, Your Honor.

BY MR. MASINTER:

With information that could only have been gotten from another party, and it is therefore hearsay evidence.

BY MR. MURRAY:

He has a right to tell what he told someone else, Your Honor.

BY THE COURT:

Not if it stems from hearsay evidence. I sustained the objection."

This, however, was not the end of the matter. Questioning resumed with the following:

"BY MR. PERLIS:

Q. Det. Fields, please refrain from saying what anyone else, what any third party said to you. That is hearsay evidence.

Continue.

A. Well, I asked Lt. Fields to contact me in the event that there was an armed robbery being committed by two white males, one of which was armed with a shotgun. Approximately an hour and a half later, I received a phone call, and as a result of that, Det. Miller and I returned to duty."

The testimony of Detective Fields concerning what the informant had told him was improper. He violated the clear instructions given him three times by the Court. After the Court had sustained objection the prosecutor cautioned the witness not to repeat hearsay. Again Detective Fields (in the answer last quoted) revealed to the jury hearsay consisting of matter told him by the informer, this time using the device of putting it in the context of what he (Detective Fields) had said to the other officer (Lt. Fields). The trial court should have dealt promptly and forthrightly with Detective Fields for repeatedly bringing to the jury's attention the very information he had been instructed not to reveal.

The pertinent question, however, is whether constitutional error was committed. This Court's decision in *Favre v. Henderson*, 5 Cir., 1972, 464 F.2d 359, *cert. denied*, 1972, 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193, lends some support to Lacoste's position that there was error of con-

stitutional magnitude. In *Favre*, as in the present case, the testifying police officer related information that had been given him by a previously reliable informant, which had led to the defendant's arrest. We held that the defendant had been denied the right to be confronted with witnesses against him in violation of the Fourteenth Amendment.

We conclude, however, that *Favre* does not control this case. In reaching this conclusion, we are guided by the Supreme Court's decision in *Dutton v. Evans*, 1970, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, which underscored that the confrontation clause and the hearsay rule do not have coterminous boundaries. Applying indicia suggested in *Dutton*[2] for identifying violations of the confrontation clause, we find that the evidence given by Detective Fields, while persuasive, was not "crucial" or "devastating"; there was no confession involved; there is no evidence of prosecutorial misconduct (indeed, the prosecutor joined the court in admonishing the officer to omit hearsay)[3]; nor was this a joint trial. The hearsay evidence was not crucial because of the other evidence that Lacoste was the hooded, shotgun robber: three eye-witnesses had identified Lacoste at the line-up (with one making an in-court identification); in addition, Lacoste's statement that he would "take his chances," after having spoken to Martin and being asked about the money, tended to connect Lacoste with Martin, who had pleaded guilty and acknowledged to the jury his own participation in the robbery.

### IV.

Other contentions charging improper trial tactics by the prosecutor and erroneous admission of Lacoste's incriminating state-

ment are without merit and do not necessitate discussion.

AFFIRMED.

---

**2.** 400 U.S. at 87, 91 S.Ct. 210.

**3.** In the instant case the Judge twice sustained the defense's objection and he reiterated that the statement of the officer was inadmissible hearsay. The interrogating prosecutor cau-

tioned Detective Fields. In *Favre* the second-hand information from the informant was repeatedly brought out by the prosecutor, over repeated objections and motions for mistrial by the defense, all of which were overruled.