United States Court of Appeals,

Fifth Circuit.

No. 92-2468.

Robert M. SHAW, Petitioner-Appellee,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellant.

Oct. 25, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, WIENER, and DeMOSS, Circuit Judges.

JOHNSON, Circuit Judge:

Robert Shaw was tried before a Texas district court for aggravated sexual assault of five-year-old Kinshasa Lane in June of 1986. Although Kinshasa was available to testify during the trial, the State refused to call her as a witness. The State instead introduced into evidence a videotaped interview of the child.[1] Shaw objected. He contended that the State was required to call Kinshasa as a witness during its case-in-chief so that he could cross-examine her. The state trial court disagreed, deciding that if Shaw wanted to exercise his rights under the Confrontation Clause, he would have to call Kinshasa during his own case-in-chief. Shaw refused to so do, and the court found him guilty of the charged offense. After exhausting his state remedies, Shaw filed this application for writ of habeas corpus, complaining that the state court had violated his Sixth Amendment rights to confront and cross-examine his accuser. The federal district court agreed and granted the writ. We affirm.

I. Facts and Procedural History

After an overnight stay at the home of Robert Shaw on October 4, 1985, five-year-old Kinshasa Lane told her mother ("Ms. Lane") that Shaw had sexually assaulted her.[2] Ms. Lane took

---

[1]Shaw was not allowed to confront or cross-examine the child during that interview.

[2]Ms. Lane and Defendant Shaw had lived together for several years, and Ms. Lane's children thought Shaw was their father. After Ms. Lane and Defendant Shaw separated, Shaw continued

Kinshasa to the hospital where medical personnel examined her. The examination revealed that Kinshasa's hymenal ring was not intact and that she had a clear, fluid discharge in her vaginal vault. However, an analysis of the discharge failed to show that it contained seminal fluid or spermatozoa.[3] Ten days after the alleged assault, a case worker with the Harris County Children's Protective Service interviewed Kinshasa. The interview was videotaped; however Kinshasa apparently was not under oath, and Shaw was not allowed to question her.

During the trial, both Ms. Lane and the case worker testified that Kinshasa had accused Shaw of molesting her. The State also played the videotaped interview of Kinshasa. It refused, however, to call the child to the witness stand to testify. Immediately after the State rested, Shaw's attorney argued that the State should have called Kinshasa during its case-in-chief. He contended that he had a right to cross-examine the child before the State rested its case. The state trial court disagreed. In fact, the court not only refused to require the State to call Kinshasa, but it also informed Shaw's attorney that if *he* called Kinshasa to testify during Shaw's case-in-chief, he would not be permitted to treat her as an adverse witness. Defense Counsel decided to take the risk. After examining Ms. Lane and Defendant Shaw, the defense called Kinshasa to the witness stand. However, after the child took the witness stand, defense counsel changed his mind and withdrew his request to examine her, explaining that he did not want to "force" her.[4]

---

to see the children on a regular basis.

[3]A Houston Police Department evidence analyst testified that while spermatozoa and seminal fluid can be detected in adult women for up to forty-eight hours, those substances can be detected in a five-year-old girl only for approximately two hours.

[4]After Kinshasa took the stand, the following transpired:

> THE COURT: Talk right into that microphone, if you would, Kinshasa.
>
> There you go. You have a very soft voice. So, speak up, if you would so we can all hear you.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.
>
> Your Honor, we would like to withdraw our call for Kinshasa. I'm not going to force her.

Record, Vol. 2, 91.

The court found Shaw guilty of the charged offense and sentenced him to thirty-five years' incarceration. Shaw appealed to the Fourteenth District Court of Appeals in Houston. He complained, among other things, that his Sixth Amendment rights to confront and cross-examine Kinshasa had been violated because the State had not called her to testify during the trial. The court of appeals disagreed, deciding that by failing to question Kinshasa during his own case-in-chief, Shaw had waived his confrontation rights, 730 S.W.2d 826. The Texas Court of Criminal Appeals refused Shaw's petition for discretionary review and denied his two applications for writ of habeas corpus.

Shaw therefore filed this application for writ of habeas corpus in the Southern District of Texas. The federal district court agreed with Shaw on the Confrontation Clause issue. It held that by requiring Shaw, rather than the State, to call Kinshasa to testify, the state court had violated Shaw's Sixth Amendment rights. The district court therefore granted the writ of habeas corpus. The State of Texas appeals.

## II. Discussion

### A. Federal Jurisdiction

The State of Texas avers that Shaw violated Texas' contemporaneous objection rule by failing to timely object and obtain a ruling on his Confrontation Clause complaint during the trial. Citing *Coleman v. Thompson* as authority, the State argues that Shaw's procedural default robs the federal courts of jurisdiction to review the merits of this case. --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A review of the procedural default rule reveals otherwise.

The procedural default rule is based upon the notions of comity and federalism. *Coleman,* at ----, 111 S.Ct. at 2554; *Murray v. Carrier,* 477 U.S. 478, 486, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). A descendant of the adequate and independent state ground rule,[5] the procedural default rule is triggered when a state court has declined to review a criminal defendant's complaints because of the defendant's failure to comply with state procedural rules. Unless the defendant shows "cause" and

[5]*Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). For a history of the adequate and independent state ground rule, see *Wainwright,* 433 U.S. at 81, 97 S.Ct. at 2503.

"prejudice" for the procedural default, federal courts are without jurisdiction to review the merits of the case. *Id.* at 87, 97 S.Ct. at 2506; *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645.

As in adequate and independent state ground cases, however, the procedural default rule bars federal jurisdiction *only* if the state court denied relief *because of* the defendant's violation of state procedural requirements. The mere existence of a procedural default, without more, does not deprive federal courts of jurisdiction. *Harris,* 489 U.S. at 261, 109 S.Ct. at 1042; *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985). On the contrary, the state court must have *actually relied* on the procedural bar as a separate and independent reason for disposing of the case. *Caldwell,* 472 U.S. at 327, 105 S.Ct. at 2638. Moreover, if the face of the state court opinion does not clearly show that the court's decision was based upon adequate and independent state law grounds[6] or include a plain statement which clearly and expressly provides that such was the case, federal courts will presume that the state court's decision was based upon federal law. *Coleman,* --- U.S. at ----, 111 S.Ct. at 2557; *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043; *Caldwell,* 472 U.S. at 327, 105 S.Ct. at 2638; *Michigan v. Long,* 463 U.S. at 1040-41, 103 S.Ct. at 3476-77. Under such circumstances, federal courts have jurisdiction to review the federal issue considered by the state court. *Coleman,* --- U.S. at ----, 111 S.Ct. 2557; *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043.

In this case, the State of Texas contends that Mr. Shaw violated Texas' contemporaneous objection rule by failing to timely object and obtain a ruling on his Confrontation Clause complaint. While this Court intimates no views on whether Shaw failed to comply with Texas' procedural requirements, we note quite readily that the last state court to review this case did not rely upon the alleged procedural default in disposing of this case. The Fourteenth District Court of Appeals did not even mention the contemporaneous objection rule, let alone plainly state that Shaw's failure to comply with that rule—or any other procedural rule—was an adequate and independent ground for rejecting Shaw's Sixth Amendment argument. *See Shaw v. Texas,* 730 S.W.2d 826, 827-28

---

[6]Such occurs when the state court's decision "appears to rest primarily on federal law, or to be interwoven with the federal law." *Michigan v. Long,* 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 3476-77, 77 L.Ed.2d 1201 (1983).

(Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Far from basing its decision on procedural default, the court of appeals determined that by failing to examine Kinshasa during his case-in-chief, Shaw waived his constitutionally guaranteed rights to confront and cross-examine her. *Id.* at 828.

It is well settled that determining whether a person has waived a federal constitutional right involves a federal question controlled by federal, not state, law. *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966); *Tennon v. Ricketts,* 574 F.2d 1243, 1251 (5th Cir.1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979) (Tuttle, J. dissenting). By holding that Shaw had waived his Sixth Amendment rights, the state court of appeals relied wholly upon federal law. Hence, the procedural default rule is inapplicable here. This Court therefore has jurisdiction to review the merits of Shaw's Sixth Amendment claim.

*B. Confrontation Clause Violation*

The State correctly assumes that its failure to call Kinshasa to testify at the trial violated Defendant Shaw's Confrontation Clause rights.[7] However, the State contends that the violation of those rights constituted harmless error. The State avers that the testimony of Kinshasa's mother and case worker, as well as the results of the rape kit and medical examination, sufficiently supported the guilty verdict against Shaw. Again, we disagree.

This Court reviews a district court's harmless error determination *de novo. Lowery,* 988 F.2d at 1372. In reviewing Confrontation Clause violations for harmless error in direct review cases, federal courts focus on the particular witness, not on the outcome of the entire trial. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). However, the Supreme Court has recently made clear that federal courts reviewing habeas corpus petitions are to reverse criminal convictions only if the constitutional error substantially and injuriously affected or influenced the verdict. *Brecht v. Abrahamson,* --- U.S. ----, ----, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353

---

[7]Requiring a criminal defendant to examine his accuser during his case-in-chief rather than mandating that the prosecution call the witness during its case-in-chief places the defendant in a no-win situation. *Lowery v. Collins,* 988 F.2d 1364, 1369-70 (5th Cir.1993). Such a requirement is inconsistent with the Confrontation Clause, for it requires the criminal defendant to either risk inflaming the jury by cross-examining the child-complainant or to avoid that risk by forgoing his Sixth Amendment rights to confront and cross-examine his accuser. *Id.* at 1369-1370.

(1993); *see also Lowery v. Collins,* 996 F.2d 770 (5th Cir.1993).

Reviewing the State's evidence against Shaw quickly reveals that the error in the case *sub judice* was far from harmless. Kinshasa's videotaped testimony was the linchpin in the State's case.[8] She was the only State witness with first-hand knowledge of the truth.[9] Moreover, Kinshasa's testimony against Shaw was virtually uncorroborated.[10] To support Kinshasa's allegations, the State relied upon the rape kit test and the fact that Kinshasa's hymenal ring was not intact. However, we do not find that evidence supportive of Shaw's guilt: The rape kit test proved that the clear discharge in Kinshasa's vaginal vault did *not* contain spermatozoa or seminal fluid.[11] And, as defense counsel pointed out during the trial, a female can lose her hymenal ring in a variety of non-sexual ways.[12]

Additionally, although the State's expert testified that the sexual assault of a five-year-old girl by a grown man would cause trauma and bruising to, as well as heavy bleeding in and around, the child's vaginal area, the medical personnel who examined Kinshasa the night after the alleged assault found no blood, bruises, or lacerations on Kinshasa. And Kinshasa's mother testified that although she inspected all of the clothes which Kinshasa took to Shaw's house, she found no sign of blood. Finally, we find it interesting that although Kinshasa was shown assault dolls at least two times prior to answering questions on the videotape, she was unable to demonstrate the alleged assault until she was taped.

---

[8]It seems apparent that Kinshasa was not under oath when answering the case worker's questions on the videotape. *See* TEX.R.CRIM.EVID. 603; *see also Lowery,* 988 F.2d at 1369. Further, the state court did not examine the child prior to the videotaped interview to determine if she was competent to testify. TEX.R.CRIM.EVID. 601(a)(2). Hence, the state trial court's determination of Shaw's guilt was based, for the most part, upon the unsworn testimony of a child who may not have been competent to testify.

[9]Although Kinshasa's mother and case worker testified that Shaw was the perpetrator, their testimony was based entirely upon Kinshasa's statements. They had absolutely no personal knowledge of Shaw's guilt or innocence.

[10]Ms. Lane did testify that Kinshasa's underclothes had a smell which she associated with "making love." However, that was the only testimony which substantiated Kinshasa's claims.

[11]The State's expert could not even testify that the presence of the discharge was abnormal for a five-year old.

[12]Indeed, Kinshasa's mother testified that she did not know whether Kinshasa's hymenal ring was intact prior to her overnight stay with Shaw.

After carefully reviewing the record, we are convinced that the State's case was almost completely built upon Kinshasa's videotaped statements. Take away the videotape, and the State's case falls like a house of cards. All that really remains is hearsay which could not have supported a finding that Shaw was guilty beyond a reasonable doubt. We believe that this record leads to the inescapable conclusion that the videotape substantially and injuriously influenced the state trial court's finding of guilt. This Court therefore holds that the violation of Shaw's rights to confront and cross-examine Kinshasa constituted harmful error.

## III. Conclusion

As we explained in *Lowery,* this Court is revolted by violence—especially sex-related violence—against children. However, we are required to be ever vigilant in ensuring that the constitutionally guaranteed rights of defendants in habeas corpus cases are not violated in substantial and injurious ways. All parties agree that Robert Shaw's Sixth Amendment rights were violated here. The record before us reveals that that violation was not a harmless one.

This Court therefore AFFIRMS the federal district court's judgment vacating Shaw's state court conviction and granting the writ of habeas corpus. We further order the State of Texas to release Shaw from custody unless the State commences a new trial within ninety days following the issuance of this Court's mandate.