**REVISED**

United States Court of Appeals,

Fifth Circuit.

Nos. 96-50785, 97-50159.

Pedro L. GOCHICOA, Petitioner-Appellee,

v.

Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellant.

Aug. 4, 1997.

Appeals from the United States District Court for the Western District of Texas.

Before JOLLY, DUHÉ and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Respondent Gary L. Johnson, on behalf of the State of Texas (hereinafter the "State"), appeals the district court's grant of a writ of habeas corpus under 28 U.S.C. § 2254 to Petitioner Pedro Gochicoa. We reverse.

I

While responding to a call complaining of a "suspicious person," Officer Victor Prieto of the Pecos, Texas police department encountered Jorge Gochicoa, Pedro's brother, sitting in a parked car near an apartment building. As Officer Prieto spoke to Jorge, Pedro (also known as "Peter") approached the car from an alley. Pedro greeted Officer Prieto "nervously" and said to his brother "let's go." Officer Prieto questioned the Gochicoas briefly and then allowed them to leave.

Immediately after the brothers left, Reeves County Sheriff's

Deputy Andy Gomez arrived at the scene. Deputy Gomez told Officer Prieto that the sheriff's department had also received a call, this time from a confidential informant, reporting that an individual named Manuel Salcido was in the area selling heroin to Pedro Gochicoa. Deputy Gomez and Officer Prieto then proceeded to search the alley from which Pedro emerged. As they searched, a young man named Michael Carrasco approached the officers and told them that he had been watching the alley from an apartment window approximately 100 to 150 feet away. Carrasco reported that when Pedro rounded the corner of the alley and saw Officer Prieto, he quickly reached into his pocket and made a motion as if he were throwing something to the ground. Carrasco, however, did not actually see anything leave Gochicoa's hand. Carrasco led the officers in the direction of Gochicoa's gesture where they found a small red balloon containing nineteen dosage units of heroin. The officers found no other objects or refuse on the ground in the area.

Police arrested Pedro Gochicoa two days later and charged him with felony possession of heroin. Gochicoa pleaded not guilty to the indictment. At his trial, the State did not identify the confidential informant or call the informant to testify. However, the State mentioned the call from the confidential informant several times during its case in chief. During his opening statement, the prosecutor made the following remark:

> Deputy Gomez ... pulls up and tells [Officer Prieto] that he has gotten a tip from a confidential informant concerning the defendant, and they start searching the area where Pedro was coming from for contraband that has been left behind.

During the prosecutor's direct examination of Officer Prieto, the following exchange took place:

Q: Did you say anything to him [Pedro Gochicoa]?

A: No, sir.

Q: Did you have any reason at this point in time to stop him, to investigate any crime that may have been committed, or do anything else concerning Pedro?

A: No, sir, I had no reason.

Q: Did you in fact allow them to drive away?

A: Yes, sir.

Q: At about that time as they were driving away, did a peace officer approach your position?

A: Yes, sir.

Q: What officer was that?

A: It was Reeves County Sheriff's Deputy Andy Gomez.

Q: Okay. And what was Deputy Gomez's purpose in being there—do you have any idea?

A: He advised me that he had some information that Peter was selling ...

    MR. PAINTER [Gochicoa's attorney]: Your Honor, I object. That's hearsay.

    MR. ZAVODA [prosecutor]: I'll withdraw the question, Your Honor.

    THE COURT: Sustained.

Gochicoa's counsel did not ask that the answer be stricken or that the jury be instructed to disregard the testimony. Moreover, despite the court's ruling, the prosecutor elicited testimony from Officer Prieto that indirectly apprised the jury of the substance of the confidential informant's out-of-court statement:

Q: Did you and Deputy Gomez have a conversation?

3

A: Yes, sir.

Q: Without telling me what he said, based upon that conversation did you and Deputy Gomez undertake a search?

A: Yes, sir, we did.

Q: And where were you looking at? What area were you searching?

A: We was looking on the alley mostly from where I had seen Peter coming from.

Q: All right. And what were you looking for—yourself, personally?

A: Well, we were looking for any kind of drugs.

Gochicoa's counsel failed to object to this continuing line of questioning.

On redirect examination of Officer Prieto, the prosecutor again introduced the confidential informant's telephone message into evidence without objection:

Q: Now you mentioned the name of Manuel Salcido when you were answering questions of Mr. Painter.

A: Yes, sir.

   ...

Q: You called him the other suspect. Was he another person that was supposed to be possessing heroin or selling heroin?

   ...

A: Yes, sir.

   ...

Q: And [Manuel Salcido's residence is] the general location that Pedro was coming from, is that correct?

A: That is correct.

When Deputy Gomez took the stand, the prosecutor again acknowledged the court's earlier ruling and admonished Gomez not to reveal the substance of the statement.

4

Q: You cannot tell me what the confidential informant told you, but based upon that information did you proceed to the 1000 block of East 10th in Pecos, Reeves County, Texas?

A: Yes, I did.

...

Q: Again, based upon the information you received from the confidential informant, did you and Victor Prieto—Officer Prieto—conduct a search of the area where Officer Prieto was at?

A: Yes, we did.

Q: What were you looking for?

A: I was looking for heroin is what I was looking for.

Again, Gochicoa's counsel did not object to this testimony. At closing, the prosecutor cited the substance of the confidential informant's tip as direct evidence against Gochicoa.

> What do we know by direct evidence? ... We know that Pedro was out at the project on August 15, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at. We know that when he saw Victor Prieto—Officer Prieto—that Pedro got nervous. We heard that from two different witnesses, Officer Prieto and Michael Carrasco. We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was in this area in his home selling heroin and that Pedro was buying it at this particular time....

Again Gochicoa's counsel failed to object to this argument.

After deliberating for approximately two hours, the jury requested an additional definition of "possession" from the judge, but the judge informed them that the definition of possession in the jury instructions was the only one that he could give them. After further deliberations, the jury announced that it was

5

deadlocked.  The judge then read the jury a modified *Allen* charge.[1]

After about an hour, the jury returned a verdict of guilty.  Based

on Gochicoa's prior criminal history, the jury assessed a

punishment of sixty years imprisonment.

Gochicoa's attorney filed an *Anders* brief,[2] and withdrew from

the case.  Gochicoa then filed an appeal *pro se,* and the Texas

court of appeals affirmed his conviction in an unpublished opinion.

Gochicoa filed a petition for writ of habeas corpus with the Texas

Court of Criminal Appeals, which denied relief without written

order.  Gochicoa then filed a habeas petition in federal district

court.

In his petition, Gochicoa asserted violation of his Sixth

Amendment right of confrontation based on the admission of the

hearsay statements of the confidential informant.  The State

responded that the references to the confidential informant's

statement were not hearsay at all under Texas law because they were

elicited to explain the actions of the police officers, not for the

truth of the matter asserted.  The magistrate judge agreed with the

State and recommended that the writ of habeas corpus be denied.

---

[1]*Allen v. United States,* 164 U.S. 492, 501-02, 17 S.Ct. 154,
157, 41 L.Ed. 528 (1896).  An *Allen* charge is a supplemental
instruction urging jurors to forego their differences and reach a
unanimous verdict.  *United States v. Winters,* 105 F.3d 200, 202 n.
1 (5th Cir.1997).

[2]Pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct.
1396, 18 L.Ed.2d 493 (1967), appointed counsel on appeal may move
to withdraw from a case after fully examining the facts and the law
pertaining to the case, concluding that the appeal presents no
legally non-frivolous questions, and filing a brief with the court
explaining its conclusion.  *United States v. Henderson,* 72 F.3d
463, 464 n. 5 (5th Cir.1995).

After reviewing Gochicoa's objections to the magistrate judge's findings, the district court appointed counsel to represent Gochicoa and held an evidentiary hearing on his claims. The district court rejected the magistrate judge's recommendation, finding that the confidential informant's statements were offered for the truth of the matter asserted and constituted hearsay under Texas law. The district court further found that admission of these hearsay statements violated Gochicoa's rights under the Confrontation Clause of the Sixth Amendment and that the error had a substantial and injurious effect on the jury's verdict under *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (setting forth "substantial and injurious effect" test for harmless error on habeas review). The court granted the writ,[3] and the State timely appealed. Gochicoa filed a motion for release pending appeal, which the district court granted; we subsequently stayed the district court's order granting release.

## II

### A

We review the district court's findings of fact for clear error and review its conclusions of law *de novo,* applying the same standard of review to the state court's decision as the district court. *Spence v. Johnson,* 80 F.3d 989, 993 (5th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996).

---

[3]Because the court granted the writ based on violations of the Confrontation Clause, it declined reach Gochicoa's claims of ineffective assistance of counsel, violation of due process, and failure of the State to disclose the identity of the confidential informant.

While Gochicoa's petition was pending before the district court, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act"), Pub.L. No. 104-132, 110 Stat. 1214 (1996).  Section 104(3) of the AEDPA amends 28 U.S.C. § 2254(d) to afford greater deference to state court judgments on federal collateral review.  The Supreme Court recently held in *Lindh v. Murphy,* --- U.S. ----, ----, --- S.Ct. ----, ----, --- L.Ed.2d ----, 1997 WL 338568 at *8 (June 23, 1997), that the new provisions of chapter 153 of Title 28, including amended section 2254(d), do not apply to cases pending on the effective date of the Act. This holding overrules, in part, our decision in *Drinkard v. Johnson,* 97 F.3d 751, 764-66 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).[4]

---

[4]Section 107 of the AEDPA creates an entirely new chapter 154 to Title 28 providing for expedited procedures for habeas petitions filed in capital cases.  The new expedited procedures are available only where the state satisfies certain "opt-in" requirements, including establishing a mechanism for appointment of post-conviction counsel for indigent prisoners and standards of competency for such counsel.  28 U.S.C. § 2261(b);  *see Mata v. Johnson,* 99 F.3d 1261, 1266 (5th Cir.1996), *vacated in part on other grounds,* 105 F.3d 209 (5th Cir.1997).

Section 104 of the AEDPA (amending chapter 153 of Title 28) is silent as to its applicability to pending cases; section 107(c), however, expressly provides that the provisions of new chapter 154 shall apply to cases pending on the date of enactment of the Act. The Supreme Court in *Lindh* held that section 107(c)'s express provision creates a negative implication that Congress did not intend that the amendments to chapter 153 apply to pending cases.  Thus, the new standards of review in section 2254 do not generally apply to habeas cases pending on the date of enactment of the AEDPA. They do, however, apply to capital cases under chapter 154; 28 U.S.C. § 2264(b) expressly provides that chapter 154 determinations are "subject to sections (a), (d), and (e) of section 2254." *Lindh,* 1997 WL 338568 at *6, --- U.S. at ----, --- S.Ct. at ----.

Since Gochicoa filed his habeas petition in district court prior to April 24, 1996, the date of the AEDPA's enactment, we must apply the pre-AEDPA standards of review to the state court's determination. *Lindh,* 1997 WL 338568 at \*8, --- U.S. at ----, --- S.Ct. at ----. Whether admission of hearsay evidence violated a defendant's Sixth Amendment right of confrontation is a mixed question of law and fact that we review *de novo* under former 28 U.S.C. § 2254(d). *See Perillo v. Johnson,* 79 F.3d 441, 445 (5th Cir.1996) (noting that federal habeas court reviews state court determinations of mixed questions *de novo* ); *see also Swan v. Peterson,* 6 F.3d 1373, 1379 (9th Cir.1993) (holding that whether Confrontation Clause is violated is mixed question of law and fact subject to *de novo* review).

B

We pause to note that after his initial objection, Gochicoa failed to object to the admission of the confidential informant's statements. Gochicoa therefore waived any hearsay or Confrontation Clause objection under Texas's contemporaneous objection rule. Tex.R.App. P. 52(a) ("In order to preserve a complaint for appellate review, a party must have presented to the trial court a

---

*Lindh* involved a noncapital case. *Drinkard,* on the other hand, involved a capital case. However, the special provisions of chapter 154 did not apply to Drinkard's petition because Texas does not yet qualify for expedited procedures under 28 U.S.C. § 2261(b). *See Mata,* 99 F.3d at 1266-67. Therefore, *Lindh* overrules *Drinkard* insofar as it holds that the AEDPA's new standards of review in 28 U.S.C. § 2254 apply to cases not subject to chapter 154, whether capital or noncapital, pending on the date of enactment of the AEDPA. *See, e.g., Blankenship v. Johnson,* 106 F.3d 1202, 1204 (5th Cir.1997) (applying *Drinkard* to noncapital case).

timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context."); *Tapia v. State,* 933 S.W.2d 631, 633 (Tex.App.1996, writ ref'd). Where a state court has declined to review a criminal defendant's federal claims for failure to comply with state procedural rules, a federal court on habeas review may not address those claims absent a showing of "cause" and "actual prejudice." *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

However, "the procedural default rule bars federal jurisdiction only if the state court denied relief because of the defendant's violation of state procedural requirements. The mere existence of a procedural default, without more, does not deprive federal courts of jurisdiction." *Shaw v. Collins,* 5 F.3d 128, 131 (5th Cir.1993). Instead, the state court must have actually relied on the procedural bar as a separate and independent reason for denying the claim. *Id.* Where the state court does not clearly and expressly rely on procedural default to dispose of the case, we may address the merits of the petition. *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991).

In this case, neither the state court of appeals on direct review nor the Texas Court of Criminal Appeals on collateral attack relied on an independent and adequate state procedural bar in rejecting Gochicoa's claims. At any rate, the State does not assert Gochicoa's failure to comply with the contemporaneous objection rule as a bar to our consideration of his claims on

10

appeal, nor did it raise procedural default in opposition to Gochicoa's petition in district court. *See Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980) (holding that state waived procedural bar to habeas petitioner's claims where it failed to raise issue in district court or on appeal). Therefore, Gochicoa's failure to object to the admission of the out-of-court statements of the confidential informant does not prevent our consideration of his Confrontation Clause claims on habeas review.

C

We must first determine whether the various references at trial to the confidential informant's tip constituted hearsay. What is or is not hearsay evidence in a state court trial is governed by state law. *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995). Under Texas law, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.Crim. Evid. R. 801(d). We agree with the district court that the prosecutor offered the confidential informant's out-of-court statement not only to explain the officers' actions at the scene, but also for its truth—that is, that Gochicoa was buying heroin from Manuel Salcido. Although a testifying officer may refer to a tip from a confidential informant in order to show why he happened upon the scene of a crime, the officer may not otherwise relate the substance of that communication to the jury.

11

*Schaffer v. State,* 777 S.W.2d 111, 114-15 (Tex.Crim.App.1989) (en banc). Similarly, the prosecutor may not "circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Id.* at 114. This is exactly what the prosecutor did in this case; his questioning of both Officer Prieto and Deputy Gomez concerning Manuel Salcido as "the other suspect ... that was supposed to be possessing heroin or selling heroin" left little doubt as to the substance of the confidential informant's communication to police. The prosecutor quelled any remaining doubt in the minds of the jurors when, during closing argument, he explicitly told them what the informant had said, citing the tip as "direct evidence" that Gochicoa possessed drugs on the night in question. The State's argument that the prosecutor offered the informant's communication for the sole purpose of explaining the officers' actions is without merit; the prosecutor elicited far more information than necessary for the stated purpose. *Id.* at 115 n. 4 (noting that where, as here, "the officer's actions (e.g., an arrest or a search) are not put into question before the jury, testimony that the officer acted upon "information received" or words to that effect should be sufficient"). The statements of the informant were offered for the truth of the matter asserted and are therefore hearsay under Texas law.

However, a federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair. *Cupit,* 28 F.3d at 536.

12

Gochicoa asserts that the admission of the hearsay statements violated his rights under the Sixth Amendment—made applicable to the states by the Fourteenth Amendment—which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The Confrontation Clause reflects a preference for face-to-face confrontation at trial to allow the accused to test the recollection and motives of the witness through cross-examination and to allow the jury to judge the credibility of the witness by his demeanor. *Ohio v. Roberts,* 448 U.S. 56, 63-64, 100 S.Ct. 2531, 2537-38, 65 L.Ed.2d 597 (1980).

Although the protections of the Confrontation Clause and the hearsay rule overlap, they are not coextensive; "the [Confrontation] Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990). The wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a "crucial, critical or highly significant factor in the framework of the whole trial." *Cupit,* 28 F.3d at 537. In making this determination, we consider five general factors derived from the Supreme Court's opinion in *Dutton v. Evans,* 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970):

(1) whether the hearsay evidence was "crucial" or "devastating";

13

(2) whether prosecutors misused a confession or otherwise engaged in misconduct;

(3) whether a joint trial or the wholesale denial of cross-examination was involved;

(4) whether the most important prosecution witness, as well as other prosecution witnesses, was available for cross-examination; and

(5) the degree to which the hearsay evidence is supported by "indicia of [its] reliability."

*Cupit,* 28 F.3d at 532 (citing *Johnson v. Blackburn,* 778 F.2d 1044, 1051 (5th Cir.1985)).

Examination of precedent indicates that the most important of the five factors are the first and the fifth—whether the evidence was "crucial" or "devastating" and whether it is supported by indicia of reliability. For example, the Supreme Court holds that the reliability of hearsay evidence is generally determinative of whether an out-of-court statement may be properly admitted at trial under the Confrontation Clause. *Dutton,* 400 U.S. at 89, 91 S.Ct. at 220. A statement of an unavailable witness is sufficiently reliable only if it falls within a firmly rooted exception to the hearsay rule or if it carries particularized guarantees of trustworthiness. *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. The determination of whether the evidence is "crucial" or "devastating," on the other hand, recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was "crucial" or "devastating," the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal. *United States v. Sarmiento-Perez,* 633

14

F.2d 1092, 1103 n. 6 (5th Cir.1981), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982); *see also Cupit,* 28 F.3d at 537 (holding that Confrontation Clause inquiry must determine not only whether hearsay evidence is admissible but also whether it is "material," *i.e.,* whether it was "crucial" or "critical" in the "framework of the whole trial").[5]

After examining the state court record with all of these considerations in mind, we conclude that use of the hearsay evidence at trial did not violate the Confrontation Clause under the *Cupit* test. On the one hand, the government concedes that the hearsay statements of the informant do not fall within a firmly rooted exception to the hearsay rule or carry any particularized indicia of reliability. The identity, perception, and biases of the informant are unknown, as is the basis for his or her knowledge of the facts reported to police. On the other hand, however, the hearsay evidence was neither crucial to the prosecution nor devastating to the defense in the context of the trial as a whole.

In granting the writ, the district court found that the hearsay was crucial and devastating because it was the only evidence that directly linked Gochicoa to the heroin; "no fact

---

[5]The "crucial" and "devastating" prong of the test is therefore somewhat redundant in light of the harmless error rule. *Sarmiento-Perez,* 633 F.2d at 1103 n. 6 (noting that although "[m]uch has been made of the "crucial' and "devastating' language in *Dutton* and *Douglas,*" test simply restates harmless error rule); *United States v. Bernard S.,* 795 F.2d 749, 754 n. 6 (9th Cir.1986) (noting redundancy of "crucial" and "devastating" prong and explaining that "a showing that the hearsay evidence was not "crucial' can lead to either a finding that the confrontation clause was not violated or a finding that such a violation was harmless").

offered into evidence at trial was as convincing of guilt as the substance of the informant's statement that Petitioner was buying heroin."  However, the tip from the informant standing alone did not connect Gochicoa to the balloon of heroin found in the public alleyway;  only Carrasco's testimony established an immediate, albeit circumstantial, link between Gochicoa and the drugs. Carrasco testified that, as soon as Gochicoa spotted Officer Prieto, he reached into his pocket and made a gesture as if he were throwing something to the ground.  On the basis of this information alone, Deputy Gomez found the balloon filled with heroin.  Both Officer Prieto and Deputy Gomez testified that there were no other objects or refuse on the ground within a ten yard radius of the area.  Carrasco's testimony, coupled with Gochicoa's nervous behavior, presented strong circumstantial evidence that Gochicoa had exercised direct physical control over the heroin. *See Mills v. State,* 847 S.W.2d 453, 455 (Tex.App.1993, writ ref'd) (finding sufficient affirmative links to contraband to support conviction where police officer testified that defendant threw something into closet and only object found in closet that could have been thrown was vial of cocaine).  Although the informant's tip certainly bolstered the state's case, it was not "crucial or devastating" given Carrasco's testimony.[6]

---

[6]Nor do we find persuasive the district court's assertion that the jurors' difficulties during deliberation demonstrate that their verdict hinged on the prohibited testimony.  The jury's request for an additional "possession" instruction is at best ambiguous;  the most likely interpretation of the jurors' request is that they disagreed as to whether Gochicoa could be guilty of possessing contraband not found on his person.

The most important prosecution witness was, therefore, Carrasco, not the hearsay declarant. Gochicoa had a full and fair opportunity to cross-examine Carrasco, as well as all other prosecution witnesses. Furthermore, the prosecutor's use of the hearsay evidence did not constitute prosecutorial misconduct; the hearsay statements, once admitted in evidence without objection, were a proper subject of the prosecutor's closing argument.[7] *Lopez v. State,* 632 S.W.2d 709, 713 (Tex.App.1982, no writ); *see also Lacoste v. Blackburn,* 592 F.2d 1321, 1325 (5th Cir.) (finding no prosecutorial misconduct under *Dutton* test where prosecutor joined court in admonishing testifying officer to omit reference to substance of confidential tip), *cert. denied,* 444 U.S. 968, 100 S.Ct. 458, 62 L.Ed.2d 381 (1979). Therefore, the *Cupit* factors weigh against a finding that admission of the hearsay statements of the confidential informant violated the Confrontation Clause.

### III

For the foregoing reasons, we REVERSE the district court's grant of the writ of habeas corpus and REMAND for consideration of Gochicoa's remaining claims.

E. GRADY JOLLY, Circuit Judge, dissenting:

I agree with much of the majority's analysis. In the end, however, I must conclude that the impermissibly admitted hearsay in

---

[7]Otherwise inadmissible hearsay admitted without objection is treated the same as any other evidence, and may be considered by the jury in support of its verdict. *Chambers v. State,* 711 S.W.2d 240, 247 (Tex.Crim.App.1986); Tex.Crim. Evid. R. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.").

17

this case was "devastating" to the defense and was unsupported by any indicia of reliability. I would therefore affirm the district court's judgment, and I respectfully dissent.

The majority opinion correctly notes that the district court's grant of habeas relief in this case is appropriate only if (a) the state court erroneously admitted hearsay, and (b) the admission of this hearsay violated Gochicoa's rights under the Confrontation Clause. Maj. Op. at ----. I agree with the majority's conclusion that hearsay was improperly admitted in this case. *Id.* The only question, therefore, is whether this improper admission of hearsay violated the rights guaranteed by the Confrontation Clause.

The majority opinion is further correct in concluding that the most important factors in determining whether the Confrontation Clause has been violated is whether the improperly admitted evidence was "crucial" or "devastating" and whether it was supported by any independent "indicia of reliability." Maj. Op. at ----. Applying these factors, the majority nevertheless concludes that, although the impermissible hearsay was supported by *no* independent indicia of reliability, its admission did not violate Gochicoa's constitutional rights, because the evidence was neither crucial to the prosecution nor devastating to Gochicoa's defense. With this ultimate conclusion, I disagree.

The majority holds that "although the informant's tip certainly bolstered the state's case, it was not "crucial or devastating' given [Michael] Carrasco's testimony." Maj. Op. at ----. Carrasco's testimony was indeed damaging to Gochicoa:

18

Carrasco testified that he had watched Gochicoa walk through the alleyway and observed Gochicoa reach into his pocket and make a gesture as though he was throwing something to the ground. In addition, Carrasco testified that Gochicoa became nervous when he saw the police officers. The police found a balloon containing heroin after being directed to the location by Carrasco, and found no other objects within the immediate area.

Although this evidence may well support a verdict of guilt,[8] it does not compel such a verdict. The balloon containing heroin was found in a public area—an area in which drug trafficking may have been common. Carrasco testified that he observed Gochicoa from a distance of 100 to 150 feet, and although he observed Gochicoa gesture as though discarding something, he saw nothing leave his hand. Thus, Carresco was unable to directly link Gochicoa to the drugs. Although nervousness and an unexplained gesture provide some nexus between Gochicoa and the drugs, the evidence that Gochicoa was in the area to buy heroin provides a crucial link between the defendant and the drugs. Therefore, the hearsay testimony from an unidentified informant surely made a unanimous verdict substantially easier to reach, and was devastating to the defense.

The importance of the improperly admitted hearsay is

---

[8]I can agree that the properly admitted evidence in this case was sufficient to allow a rational jury to convict Gochicoa, but that is not a question before this court today. A Confrontation Clause violation may occur when inadmissible evidence was devastating to the defense, even if the properly admitted evidence, viewed in isolation, is sufficient to sustain the verdict.

19

underscored by the prosecution's repeated reliance upon it.  In the opening statement, throughout the trial, and in closing argument, the prosecutor relied upon information from the confidential informant to link Gochicoa to the drugs.  In the closing argument, the prosecutor told the jury:

> What do we know by *direct evidence?*  We know that Pedro Gochicoa was out at the project on August 15th, 1991, at about five or 5:15 P.M. We know his brother Jorge was waiting for him to come back from where he was at.
>
> We know that when he saw [Officer Prieto] that Pedro Gochicoa got nervous.  We heard that from two different witnesses, Officer Prieto and Michael Carrasco.
>
> *We know that Deputy Gomez had information from a confidential informant that Manuel Salcido was in this area in his home selling heroin and that Gochicoa was buying it at this particular time.*

I am unable to conclude that the jury was not substantially influenced by this impermissibly admitted evidence.  Therefore, the evidence provided by the informant was devastating to Gochicoa's case.[9]

---

[9]The majority opinion cites *Mills v. State,* 847 S.W.2d at 455, to support the conclusion that the informant's information was not critical in this case.  In *Mills,* the Texas court rejected a criminal defendant's contention that the evidence was insufficient to show that he knowingly possessed cocaine.

Because *Mills* involved a challenge to the sufficiency of evidence supporting a conviction, it is of little relevance to our issue today.  Resolving a sufficiency of the evidence issue requires the court to resolve only whether a minimally sufficient evidence exists to support a conviction.  In contrast, in reviewing a Confrontation Clause challenge, we determine if the jury was improperly influenced by the impermissible evidence.

Moreover, *Mills* is distinguishable from the case before us today.  In *Mills,* police officers entered the defendant's residence pursuant to a search warrant.  The officers observed the defendant throw something into an open closet.  In

20

In addition to determining whether inadmissible evidence is "crucial or devastating," we must also evaluate the reliability of the hearsay. As the majority opinion recognizes, "the Supreme Court holds that the reliability of hearsay evidence is generally determinative of whether an out-of-court statement may be properly admitted at trial under the Confrontation Clause." Maj. Op. at ----. When hearsay evidence is improperly admitted, has *no* indicia of reliability, and makes a conviction substantially easier to obtain, the Confrontation Clause has been violated. The majority concedes that the hearsay statements of the informant have *no* indicia of reliability: the "identity, perception, and biases of the informant are unknown, as is the basis for his or her knowledge of the facts reported to police." Yet, the majority hold that Gochicoa's Sixty Amendment rights have not been violated. Apparently, the United States Supreme Court has no influence with the majority members of this panel.

In sum, because the impermissibly admitted hearsay was "devastating" to Gochicoa's defense, *and* was not supported by any independent indicia of reliability. I would therefore affirm the district court's grant of habeas corpus but would permit the state to retry Gochicoa.[10]

contrast to the testimony in this case, the officer saw the object leave the defendant's hand, and was able to identify its approximate size. More importantly, the defendant was in his private residence when this event occurred, in sharp contrast to the instant case, where the contraband was found in a public area.

[10]Although Gochicoa has not prevailed today, on remand the district court will undoubtedly carefully consider whether Gochicoa

21

received adequate representation at his initial trial.