**Mitchell LOWERY, Petitioner–Appellant,**

v.

**James COLLINS, Director Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 91–5086.

United States Court of Appeals, Fifth Circuit.

April 7, 1993.

Jennifer M. Smith (Court-appointed), Baker & Botts, Houston, TX, for petitioner-appellant.

S. Michael Bozarth, Asst. Atty. Gen., Dan Morales, Atty. Gen., Austin, TX, for respondent-appellee.

Before WIENER, BARKSDALE, and DEMOSS, Circuit Judges.

WIENER, Circuit Judge:

In this appeal from the federal district court's adverse habeas corpus ruling, Petitioner–Appellant Mitchell Lowery asserts that the court erred in denying him relief. Lowery insists that—in a state criminal case in which he was convicted of sexual assault of a minor—the State's introduction of a videotape of an interview of the child-complainant conducted by a social worker violated the defendant's Sixth Amendment right to confront the witnesses against him,[1] and that the error was harmful beyond a reasonable doubt under *Chapman v. California*.[2] Concluding that the district court improperly denied Lowery habeas relief, we reverse and grant the writ of habeas corpus pursuant to 28 U.S.C. § 2254, vacating the state conviction.

I

FACTS AND PROCEDURAL HISTORY

Mitchell Lowery was indicted in Wood County, Texas, for aggravated sexual assault of a child, on the strength of the complaint of the alleged victim, Lowery's six-year-old stepson, Randall. Lowery pleaded not guilty. At his 1985 trial, the State's evidence consisted of 1) the testimony of Randall's mother, from whom Lowery is divorced (and from whom he was separated at the time of the alleged assault and the time of her testimony), 2) the testimony of three additional witnesses,[3] and 3) the playing of the videotaped interview, in which six-year-old Randall explained in detail (with the use of anatomically correct dolls) the alleged molestation. Lowery was convicted by the jury, and was sentenced to imprisonment for a term of fifty years.

Lowery's conviction was affirmed by the Court of Appeals in Texarkana (hereafter, the intermediate court), which issued an unpublished opinion. But three years and three months after Lowery's jury trial, the Texas Court of Criminal Appeals (hereafter, the TCCA) vacated his conviction. In so doing, the TCCA held that, in light of its decision in *Long v. State*[4] and the U.S. Supreme Court's opinion in *Coy v. Iowa*,[5] both discussed *infra*, the State's introduction of the videotape of the interview of Randall violated Lowery's Sixth Amendment Right to Confrontation of the witness.[6] It remanded the case to the intermediate court "to determine the harmful-

---

1. Technically, he asserts a violation of his Sixth and Fourteenth Amendment rights. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We will refer to the violation simply as one of his Sixth Amendment rights.

2. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

3. A psychologist, Dr. Don Walker, who had interviewed Randall seven months after the incident, testified that the boy's intelligence was average and that his behavior was not inconsistent with sexual abuse. Dr. Beverly Waddleton, a physician, testified that the medical evidence was also consistent with sexual molestation.

And Hans McClure, the child placement specialist who interviewed the boy, testified concerning the circumstances of the interview.

4. 742 S.W.2d 302 (Tex.Crim.App.1987).

5. 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

6. *Lowrey v. State,* 757 S.W.2d 358 (Tex.Crim. App.1988). The Texas courts misspelled Lowery's name throughout their opinions. Any italicized, misspelled reference using petitioner's name will thus be a reference to one of the state court opinions.

ness of the introduction of the videotape in light of the entire record of the trial." [7] On remand, the intermediate court held that the erroneous admission of the videotaped testimony was harmless constitutional error under the Supreme Court's established standard.[8] This holding was made, however, in the face of the Supreme Court's holding in *Chapman*, that a defendant convicted on the basis of constitutionally inadmissible evidence is entitled to a new trial unless the error "was harmless beyond a reasonable doubt" [9]—i.e., that " 'there [wa]s [no] reasonable possibility that the evidence complained of might have contributed to the conviction.' " [10]

After exhausting his state habeas remedies, Lowery initiated this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 (1988). He asserted that his constitutional rights had been violated in the state proceedings. Specifically, he alleged that 1) he had been denied his confrontation rights under the Sixth Amendment; 2) the jury had been improperly instructed on the effects of parole and good conduct; 3) the trial court had improperly admitted evidence of extraneous offenses he had committed; 4) he had received ineffective assistance of counsel; and 5) he had been improperly denied use of the trial records.

The case was referred to a magistrate judge who, in September 1991, recommended denial of habeas relief. The magistrate judge's memorandum addressed the claims seriatim, finding them either not cognizable in a habeas petition, wholly lacking in merit, or frivolous. In November 1991, the district court, after "a *de novo* determination of the objections raised by the prisoner" to the magistrate judge's report, adopted the findings and recommendation of that report and denied habeas relief. After Lowery timely appealed and filed his *pro se* brief, counsel was appointed for him. Appointed counsel then filed a supplemental brief on the Sixth Amendment issue.

## II

## ANALYSIS

To obtain review of a state court judgment under § 2254, a prisoner must assert a violation of a federal constitutional right. In the instant case, Lowery asserts that, as held by the TCCA on direct appeal, his Sixth Amendment Confrontation right was violated by the trial court's admission of the videotaped interview in lieu of having the child testify. Lowery's petition further asserts that, in light of *Chapman*, the intermediate court erred on remand in its consideration of the effect of the constitutional error. On habeas review, however, the federal district court found that Lowery's constitutional rights were not violated by the introduction of the videotape despite the failure of the state to call the child-complainant to testify at trial. The district court reasoned that because the child-complainant was available to testify (i.e., Lowery could have called him), Lowery was not denied his right to confront the witness.

In simplest form, Lowery complains that, even though the violation was correctly recognized by the TCCA—the court of last resort for criminal appeals in Texas—on remand the effect of that violation was erroneously analyzed by the intermediate court. As a result, insists Lowery, that violation of his Sixth Amendment right was erroneously found to have been harmless under *Chapman*.

In order to consider this matter properly, we must determine 1) whether Lowery's constitutional rights were violated; 2) if so, what is the applicable standard of review of a state court's harmless error determination (under *Chapman*) in a federal habeas proceeding; and 3) when the constitutional violation that is found to have occurred is reviewed under the proper standard of review, was that violation nonetheless harmless beyond a reasonable doubt? In the

---

7. *Lowrey,* 757 S.W.2d at 359.

8. *Lowrey v. State,* 764 S.W.2d 4 (Tex.App.—Texarkana 1988, no pet.).

9. 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

10. *Id.* (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)).

context of the instant case, then, we must determine whether (as found by the TCCA) admission of the videotape was constitutional error; and if it was, whether we agree with the intermediate court's determination on remand that such error was harmless beyond a reasonable doubt.

A. *The Introduction of the Videotape Violated Lowery's Sixth Amendment Rights*

 As we have noted, when the TCCA vacated Lowery's conviction in the instant case, that court reviewed its own Confrontation Clause precedent, as well as the precedent of the United States Supreme Court. In *Long v. State*,[11] the TCCA had held that a conviction could not stand when the child complainant had not testified in the State's case in chief but had testified for the State as a rebuttal witness.[12] Subsequently, that court stated in *Lowrey* that

in *Long*, this Court held that forcing a defendant to call a child complainant to testify in order to cross-examine that individual creates a risk of inflaming the jury against a criminal defendant and also unfairly requires a defendant to

choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case.[13]

The TCCA in *Lowrey* also discussed *Coy v. Iowa*,[14] in which the United States Supreme Court held that the defendant's Confrontation Clause rights were violated by the placing of a screen between the child-complainant and the defendant. The *Lowrey* court implied that the violation in the instant case was more prejudicial than were either the *Long* or the *Coy* violations because in *Lowrey* the State did not call the child-complainant to testify at all.[15]

Since it decided *Coy*, the Supreme Court has rendered three opinions that address the aspect of the defendants' Sixth Amendment rights we here consider. Of those three, the case that is the most important to our review of the instant case is *Maryland v. Craig*.[16]

In *Craig*, the Court held that admission of testimony of the child-complainant through the use of a one-way video monitor—which made possible the questioning and cross-examination of the child, and which questioning in turn was viewed by

---

**11.** 742 S.W.2d 302 (Tex.Crim.App.1987) (involving *videotape testimony of child complainant*), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988).

**12.** In *Long*, the TCCA affirmed an intermediate court's reversal of a conviction, holding that the Texas statute under which the videotaped interview had been admitted, art. 38.071, § 2, V.A.A.C.P., violated both the United States and Texas Constitutions. The videotape was introduced in Lowery's trial under the same statute. The State, in its brief to this court, quoted a *section of the district court's opinion* to explain what the State asserted was the essentially statutory basis of *Long's* holding and the timing of the *Long* intermediate appellate holding vis-a-vis Lowery's trial. At oral argument, counsel for the State argued at length that Lowery had *waived his confrontation rights based on the* timing of the intermediate appellate decision in *Long* vis-a-vis the beginning of Lowery's trial— the intermediate appellate opinion having been issued a few days before Lowery's trial. This argument is facially flawed. The block quotation used in *the State's brief to support this* waiver argument is from the section of the district court's opinion concerning ineffective assistance of counsel. The simple fact is that during Lowery's trial, he timely objected to the

introduction of the videotaped interview and, notwithstanding the State's brief, he did not waive his Sixth Amendment rights.

**13.** *Lowrey,* 757 S.W.2d at 358–59.

**14.** 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

**15.** In *Long* and again in *Lowrey*, the TCCA found Confrontation Clause violations under both the Texas and the United States Constitutions. On federal habeas review, this court, like the district court, considers possible violations of Lowery's federal Confrontation Clause rights only, not possible state constitutional violations. This does not preclude our consideration as instructive the state courts' reasoning and holding concerning matters of federal law—which we nevertheless review de novo. The deference we owe under § 2254(d) to state court factual findings is not implicated here, for here no operable facts are in dispute.

**16.** 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *see White v. Illinois,* —— U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

the jury—did not violate the defendant's confrontation rights. In so holding, however, the Court recognized that "a defendant's right to confront accusatory witnesses may be satisfied absent face-to-face confrontation at trial *only whe[n] denial of such confrontation is necessary to further an important public policy and only whe[n] the reliability of the testimony is otherwise assured."* [17] Reviewing Maryland's procedures for admitting the testimony of the child under such circumstances, the Court stated:

> We find it significant ... that Maryland's procedure preserves all of the other elements of the confrontation right: the child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies.[18]

■ The confrontational safeguards approbated by the Supreme Court in *Craig* were conspicuously absent during Lowery's trial; clearly, the procedure did *not* "preserve[ ] all other elements of the confrontational right." For example, the state does not here assert record does not reflect that, before the interview, the competency of the witness to testify was determined; or that the child was under oath during the interview; or that Lowery had an opportunity for a full and contemporaneous cross-examination of the child-complainant during the interview [19]; or that the observable demeanor of the boy gave the jury the opportunity that was sanctioned in *Craig* to determine the child's veracity.

On federal habeas, the State argues that inasmuch as the child-complainant was available in the courtroom and was found competent to testify, Lowery's constitutional right to confront the witnesses against him was not violated. Specifically, the State insists that Lowery's failure to call the child-complainant to the stand constituted a waiver of his Sixth Amendment right. The district court credited this argument, finding that because "the complaining witness was *available to testify* [,] Lowery was assured of his right to cross-examine the complaining witness." [20] The district court quoted from the pre-*Craig,* Supreme Court case of *California v. Green* as support for the proposition that " 'the Confrontation Clause is not violated by admitting declarant's out-of-court statements, *as long as the declarant is testifying as a witness* and is subject to a full and effective cross-examination.' " [21] By that we infer that the district court equated "available to testify" with actually "testifying as a witness and [being] subject to a full and effective cross-examination." This interpretation—advanced forcefully again by the State at oral argument to this court—is a conclusion of law which we review de novo. And when we do, we find that it is simply wrong.

■ The State would, and the district court did, impermissibly impose on the defendant the Catch–22, so styled by the TCCA in *Long,*[22] of either calling the child-complainant to the stand at the "risk [of] inflaming the jury against [himself]" or avoiding the risk of thus inflaming the jury at the cost of waiving his constitutional right to confront and cross-examine the key witness against him.[23] As was recognized by the TCCA in *Lowrey,* this "no win"

---

**17.** *Craig,* 497 U.S. at 850, 110 S.Ct. at 3166. (emphasis added).

**18.** *Id.*

**19.** *See* Tex.Code Crim.Proc.Ann. art. 38.071 § 2(a)(1) (making a prerequisite of an interview that "no attorney for either party [be] present when the statement is made").

**20.** (Emphasis added).

**21.** (Emphasis added) (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), which was *not* a child-complainant witness case). The court (magistrate) also cited *Story v. Collins,* 920 F.2d 1247, 1255 (5th Cir.1991), and *Briggs v. State,* 789 S.W.2d 918, 922 (Tex.Crim.App.1990), for this proposition (discussed more fully below).

**22.** 742 S.W.2d at 320.

**23.** *Lowrey v. State,* 757 S.W.2d at 359.

burden "unfairly requires the defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case." [24] Such a result is irreconcilable with the alternative confrontational protections blessed by the Supreme Court in *Craig*. The *Craig* opinion requires a case-specific finding of necessity before the special, alternative testimony procedures may be relied on *exclusively*. In fact, the result reached by the district court is also inconsistent with the three cases, discussed below, relied on in support of the erroneous proposition that the defendant can be forced to choose between calling the adverse child-complainant to the stand or waiving his Sixth Amendment confrontation right.

Even though the above quoted language from *California v. Green* eschews the very result reached by the district court, on appeal the State either disingenuously or mistakenly continues to extol that very wording to us for the proposition that mere availability of the child-complainant provides all of the confrontational protections to which the defendant is entitled. Does the State not realize—or just not accept—the distinction that the admission of the out-of-court statements in *Green* was constitutionally permissible only "as long as the declarant [wa]s testifying [in open court] as a witness," [25] while the child-complainant in the instant case *was not testifying in court?* Moreover, the other two cases cited by the district court, *Story v. Collins* [26] and *Briggs v. State*, [27] involved trials in which the child-complainant *did* testify in court and *was* subject to contem-

poraneous cross-examination—situations that differ enormously from that of the instant case. In stark contrast to the situations in *Story* and *Briggs*, the child-complainant in this case was not called by the State (or, obviously, by Lowery) to testify. Thus, we need not—and therefore do not—decide whether the videotape might have been admissible if the child had testified.

In addition to *Craig*, the Supreme Court's decisions in *Idaho v. Wright*, [28] which was *Craig*'s companion case, and *White v. Illinois*, [29] provide surplus underpinning for the proposition that the admission of the videotape constituted a clear violation of Lowery's confrontation right. Even though the State cites *Wright* for the proposition that "[h]earsay evidence used to convict a defendant is admissible under the Confrontation Clause if it 'possesses indicia of reliability,'" the State fails to mention the additional, distinguishing fact that in *Wright* the Court found the admission of the subject hearsay—statements of a physician concerning his leading colloquy with the three-year-old child-complainant who was found to be unable to communicate meaningfully to the jury—did *not* possess such indicia! In *Wright*, the Court stressed the need for "particularized guarantees of trustworthiness" [30]—which can no more be found in the instant case than they were in that one.

In *White*, the Supreme Court held that the admission of a hearsay statement of a four-year-old child declarant at trial did not violate the Confrontation Clause, even though the prosecutor did not put the child-complainant on the stand or seek a finding of unavailability. [31] But the out-of-court

---

**24.** 757 S.W.2d at 359.

**25.** 399 U.S. at 158, 90 S.Ct. at 1935.

**26.** 920 F.2d at 1255.

**27.** 789 S.W.2d at 920. Interestingly, the TCCP in *Briggs* continued to recognize that the exact situation at issue here violates defendant's confrontation rights. In holding that the statute at issue was not unconstitutional on its face the court nevertheless stated:

> In the event the State merely makes the child "available," but forces appellant to call her to the stand, the statute may indeed function to

deprive the accused of due process and due course of law. We cannot conclude on that basis, however, that the statute is unconstitutional on its face.

*Id.* at 922.

**28.** 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

**29.** —— U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

**30.** 497 U.S. at 822, 110 S.Ct. at 3150.

**31.** —— U.S. at ——, 112 S.Ct. at 743.

statement in *White* was held to be admissible because it fell within two clearly established exceptions to the hearsay rule—spontaneous declaration and medical examination. As the evidence had been admitted under clear exceptions to hearsay, reliability of the testimony was not at issue.

The *White* decision is equally distinguishable from both *Wright* and the instant case. In *Wright,* the out-of-court statements were generated in response to questioning by a doctor who was *not* gathering information for treatment; and in the instant case the statements were made in response to a child welfare specialist's videotaped questioning of the child-complainant. The hearsay statements in *Wright* lacked the "particularized guarantees of trustworthiness." The same is at least equally true here of the statements in the videotaped questioning of young Randall.

Simply put, the alternative protections found acceptable in Supreme Court cases that have dealt with similar circumstances were not afforded to Lowery. Neither was an additional showing made of the existence of any overwhelming state need to protect the child-complainant by precluding his having to testify in open court—a showing that would be totally inconsistent with the State's assertion that Randall was available and could have testified if Lowery had but called him. Indeed, as noted, the trial court found him competent to testify.

We find that the holding of the TCCP—made over four-and-a-half years ago—that the admission of the videotape of the interview violated Lowery's Sixth Amendment right to confront the witnesses against him, was correct then and is correct now.

B. *Standard of Review of the Intermediate Court's Decision that the Constitutional Error was Harmless Under* Chapman

◼ Although other circuits have considered and determined the proper standard of review of a state court's finding of harm-

less error under *Chapman* for a federal habeas proceeding, that issue appears to be res nova in this circuit. Professors Childress and Davis, in their treatise, *Federal Standards of Review,* assert that the issue is a mixed question of law and fact which is reviewable de novo.[32] Those commentators conclude:

> Assertion of harmfulness of error on habeas review raises a true standard-of-review question that has been inadequately addressed by the courts and has received contradictory treatment by scholars.... The matter is of particular importance in habeas review of state court convictions. If harmlessness is a question of law or a mixed question, the harmlessness decision of the state court will receive independent review by the federal habeas courts. On the other hand, if harmlessness is a question of fact, under the *presumption of correctness* deference required for state court fact findings under Section 2254(d), state court convictions would be almost entirely insulated from federal habeas review by a state court finding that the admitted constitutional error was harmless in any event (at least as to errors not per se harmful).
>
> The Supreme Court held in *Chapman v. California* that the harmlessness of constitutional error is a federal question. That statement was enlarged by the Court in *Rushen v. Spain* [464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)] when it denominated harmlessness a "decision ... of federal *law*...."
>
> Because constitutional harmless error is at bottom a sufficiency question (which is on review traditionally a question of law or a mixed question of the application of the law to fact), most courts apply independent review to a harmlessness holding by a court below without discussion.[33]

As noted by Childress and Davis, courts that have devoted any substantive discussion to the issue have agreed with the

---

**32.** 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 13.10 (2d ed. 1992).

**33.** *Id.* at 13–60 to 13–61 (footnotes omitted).

Ninth Circuit's ruling in *Dickson v. Sullivan*.[34] There, the court stated that a state court's

> conclusion that the constitutional error was harmless does not constitute a factual finding entitled to a presumption of correctness under section 2254(d). The question whether the [particular constitutional violation] prejudiced [the defendant] requires application of a legal standard to historical facts. It is thus a mixed question of law and fact reviewable de novo.[35]

As this issue is one of first impression in the Fifth Circuit, we choose to adopt the cogent reasoning of our colleagues in those other circuits that have addressed the question squarely and have held that de novo is the proper standard of review for the question whether a state court has properly applied the *Chapman* harmless error standard. If the discrete facts on which the ultimate, mixed fact and law question was based were contested, we would review them for clear error. But the underlying facts here are undisputed; only the ultimate question, one mixed in law and fact, remains.

C. *Admission of the Videotaped Interview Was Not Harmless Error Under* Chapman

■ We cannot accept that a videotaped interview of a little boy responding to a child-placement specialist's questions about the details of an alleged sexual molestation could *not* have "possibly influenced the jury adversely to the defendant."[36] Yet that is precisely what the majority of the intermediate court found. It determined that the videotaped interview in no way contributed to the jury's verdict of guilty. Concerning that holding of the majority, the dissenting justice stated:

We thus find ourselves facing error that requires reversal unless we can somehow, in mysterious fashion, magically determine beyond a reasonable doubt that the error in admitting the videotape did not contribute to Lowery's conviction or punishment. For this Court to make this type of factual determination belies the old Chinese proverb to the effect that a picture is worth a thousand words.

Although the dissenting justice misspoke in referring to the court's determination as a factual one (that court was—as discussed above—deciding a mixed question of law and fact), the sentiment expressed is right on the mark.

In reaching the conclusion that the error was "harmless beyond a reasonable doubt," the intermediate court sandwiched a straight-forward discussion of the facts supporting the verdict—a classic but irrelevant "sufficiency of the evidence" analysis—between two conclusionary statements of the applicable standard, then summarily declared that the error did not meet that standard. Nevertheless, that court's own review reveals that, with the exception of the videotape, the only other evidence consisted of the testimony of four individuals: the child-complainant's mother (who was then separated and later divorced from the accused), a psychologist, an examining and treating physician, and the child-placement specialist who conducted the videotaped interview with the boy.

Even a cursory review of the evidence summarized by the intermediate court demonstrates that if the videotaped interview were excluded from the evidence, Lowery's conviction would have been based on nothing more than 1) the testimony of a physician and a psychologist about physical evidence that could never specifically implicate Lowery, and 2) the mother's hearsay testimony purporting to tie the "physical evidence" to Lowery.[37] She also testified

**34.** 849 F.2d 403 (9th Cir.1988); *see McKenzie v. Risley,* 842 F.2d 1525, 1530–31 (9th Cir.1988); *Graham v. Wilson,* 828 F.2d 656, 659 (10th Cir. 1987); *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1018 (7th Cir.1987); *Lacy v. Gardino,* 791 F.2d 980, 986 (1st Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986);

CHILDRESS & DAVIS, *supra* note 21, at 13–61 n. 27 (collecting authorities).

**35.** 849 F.2d at 405.

**36.** *Chapman,* 386 U.S. at 23, 87 S.Ct. at 828.

**37.** We recognize that, under Texas's "outcry" rule, the mother in the instant case would be

that "on one occasion she had found in R__ L__'s underwear a mixture of feces and 'sperm.'"[38] Like the testimony of the doctor and the psychologist concerning their examinations of the boy, this testimony by Randall's mother is incompetent to tie such evidence directly to Lowery.

 Concerning its review and use of hearsay evidence in its analysis, the intermediate court wrote that "[t]he fact that some of this evidence was hearsay does not deprive it of probative weight in determining the sufficiency of the evidence."[39] Although this is a correct statement of a Texas evidentiary rule, that rule is simply inapplicable here. That court was required to perform a "harmless beyond a reasonable doubt" analysis under *Chapman,* not to focus on whether the remaining, untainted evidence was adequate to support a verdict of guilty. In other words, this constitutional issue is not to be tested under a mere sufficiency-of-the-*untainted*-evidence analysis the way the courts are instructed to test the validity of a partially tainted affidavit for a search warrant under *Franks v. Delaware.*[40] Rather, the tainted evidence is to be tested under *Chapman*'s query: Was there no reasonable possibility that the tainted evidence might have contributed to the jury's verdict of guilty, i.e., was the constitutional violation harmless beyond a reasonable doubt? Clearly, then, the reviewing court must concentrate on the evidence that violated Lowery's confrontation right, not the sufficiency of the evidence remaining after excision of the tainted evidence.

The requirement of focusing on the prejudice of the erroneously admitted evidence can best be understood in light of the Supreme Court's admonition that "evidence which possibly influenced the jury adverse-ly to the [defendant] cannot ... be conceived as harmless."[41] Here, the conclusion that no such possibility existed, as held by the intermediate court, is simply insupportable. The tainted evidence had to have had a tremendous impact on the jury—it was, after all, a videotaped interview in which a little boy described and demonstrated with anatomically correct dolls the selfsame acts of molestation that Lowery was alleged to have perpetrated on the child. We cannot accept the finding of the intermediate court that there was *no* "reasonable probability" that such obviously prejudicial evidence could "have contributed to the conviction." This is particularly true when that evidence is compared to the only other basis for the conviction: physical evidence not tied to the defendant except by hearsay testimony.

## III

## CONCLUSION

 We are convinced that we are no less repulsed by acts of sexual molestation of children than are the other courts that have reviewed Lowery's direct appeals and habeas petitions. But we are acutely aware that the constitutional guarantees of a fair trial, and of those protections—such as confrontation of accusers and witnesses—created by the Constitution to ensure that the trial is fairly conducted, are all the more difficult to apply when the nature of the accusation is as repugnant as that of the instant case. We are equally aware that the more inflammatory the facts the greater the need to adhere to the procedural guarantees that ensure constitutional fairness in the context of criminal trials. In that vein, the teachings of *Chapman v. California* are pellucid, mandating our

---

allowed to testify concerning the child's statements of alleged abuse—not for the truth of the matter asserted, "but merely as evidence that the [alleged] victim informed someone of the offense." *Heckathorne v. State,* 697 S.W.2d 8, 12 (Tex.App.—Houston (14th Dist.) 1985, pet. ref'd); *see* TEX.CODE CRIM.PROC.ANN. art. 38.07; *Clark v. State,* 659 S.W.2d 53 (Tex.App.—Houston (14th Dist.) 1983, no pet.).

**38.** *Lowrey,* 764 S.W.2d at 5.

**39.** *Id.* (citing *Chambers v. State,* 711 S.W.2d 240 (Tex.Crim.App.1986)).

**40.** 438 U.S. 154, 162–63, 171–72, 98 S.Ct. 2674, 2679–80, 2684–85, 57 L.Ed.2d 667 (1978); *see United States v. Privette,* 947 F.2d 1259, 1261 (5th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992).

**41.** *Chapman,* 386 U.S. at 23–24, 87 S.Ct. at 828.

holding that admission of the videotaped interview of the child-complainant violated Lowery's confrontation rights under the Sixth Amendment.

Given that determination, we review de novo the intermediate court's holding that the admission of the videotaped interview was harmless error beyond a reasonable doubt under *Chapman*. As that court erroneously focused on the sufficiency of the remaining evidence rather than on whether showing the inadmissible videotape at trial could possibly have contributed to the jury's conviction of Lowery, that court's decision was fatally flawed. We find the federal district court's denial of habeas relief on a theory of waiver to be similarly flawed.

Therefore, for the reasons set forth above, the district court's judgment denying Mitchell Lowery's habeas petition is REVERSED; his state court judgment of conviction is VACATED; his petition of a writ of habeas corpus is GRANTED; and he is ORDERED released from custody if the State of Texas should fail to commence a new trial within 90 days following the issuing of our mandate. SO ORDERED.