DENNIS, Circuit Judge,
concurring in affirming the conviction and sentence of J.D. Bell, but dissenting from the affirmance of the conviction and sentence of Charles Cotton.
I concur in the affirmance of the conviction and sentence of J.D. Bell and join fully in the panel opinion with respect to his case.
I respectfully dissent from the majority’s affirmance of the conviction and sentence of Charles Cotton. The majority’s opinion with respect to Charles Cotton is correct and well done in every respect except its determination that the violation *472 of Cotton’s constitutional right under the Fourteenth and Sixth Amendments to be confronted with the witnesses against him was harmless error.
When there is a violation of a criminal defendant’s federal constitutional right, the court of appeals must reverse the conviction and sentence unless the government proves beyond a reasonable doubt that the error was harmless in light of the other evidence presented at trial. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A Confrontation Clause violation is not harmless unless “there [is] no reasonable possibility that the tainted evidence might have contributed to the jury’s verdict of guilty.” Lowery v. Collins, 988 F.2d 1364, 1373 (5th Cir.1993); Chapman, 386 U.S. at 23-24, 87 S.Ct. 824.
Judged against these standards, the Confrontation Clause violation in this case was not harmless. There is a reasonable possibility that Bell’s statement might have contributed to the jury’s guilty verdict. The district court overruled the defendant’s objection and permitted the prosecution to present the testimony of Officer Sypniewski that Bell had given the police a written statement in which he admitted bringing whiskey to Lee Jim’s house and raping George Cotton there. This statement, which was against Bell’s penal interest, tended to corroborate Lee Jim’s testimony that after he, George Cotton, Bell, and Charles Cotton had imbibed of the whiskey which Bell and Charles Cotton brought to Lee’s house, Charles Cotton raped Lee Jim, while Bell raped George Cotton. The statement of Bell, as testified to by officer Sypniewski, flatly contradicted the testimony of Charles Cotton and his wife Phyllis, who both stated that neither Charles Cotton nor Bell entered Lee Jim’s home, brought whiskey there, or drank with Lee Jim or George Cotton there on the day of the alleged rapes.
Further, the impact of the statement was not insignificant, but rather was magnified, in light of the evidence or lack of evidence at trial. The prosecution was unable to introduce any medical or physical evidence that Lee Jim had ever been raped. Thus, without the unconstitutional introduction of Bell’s statement, the prosecution would have been forced to rely solely on the testimony of Lee Jim and George Cotton to prove the rape allegations. George Cotton’s speech impediment and the drunkenness of both him and Lee Jim at the time of the alleged crime significantly impaired their ability to provide clearly credible eyewitness testimony directly tending to show that Charles Cotton raped Lee Jim.
Lee Jim, a self-acknowledged alcoholic, admitted that he was intoxicated on the day and at the time of the alleged rape. In fact, he was in such a state of intoxication that during the 45 minutes when Millie Chickaway, Clay Wesley, and Chris John were in his home, he did not stir from the prone position in which he was found. Further, although he was taken to the hospital soon after the alleged incident to have other injuries tended to, the prosecution introduced no evidence that he complained of rape that night. He did not complain of rape until more than a week after the incident, too long afterwards for a doctor to determine whether there had been medical evidence of a rape on the night in question.
George Cotton is a deaf-mute who was also intoxicated the day of the incident. He was forced to convey his evidence through his own improvised hand signals to his sister, Pauline Cotton, because he does not know any recognized form of sign language. Because she was deficient in English, Pauline Cotton’s interpretation of *473 George Cotton’s hand signals had to be conveyed in Choctaw to a Choctaw-English translator. Pauline Cotton admitted before the jury that she was a biased witness and defense witness Junior Cotton testified that her translation was inaccurate and that several times she coached George as to the signaled answers he should provide. Although the district court did not abuse its discretion in allowing the prosecution to use Pauline as an interpreter, George Cotton’s sui generis deaf-mute sign language, the doubt cast upon the veracity of Pauline’s translation of it into Choctaw, and George Cotton’s drunkenness at the time of the alleged offense would allow a reasonable jury to discount his testimony.
The testimony of the remaining three witnesses, Chickaway, Wesley, and John did not add much, if anything, to the prosecution’s case. These witnesses arrived at Jim’s home sometime after the alleged unlawful conduct occurred. Although they were able to testify that Lee Jim was found in a prone position, none of these witnesses could place Charles Cotton at the alleged crime scene, much less testify that Charles Cotton raped Lee Jim.
Considering the foregoing frailties in the prosecution’s evidence, without Bell’s statement which flatly contradicted the testimony of Charles Cotton and his wife and placed him at the scene at the time of the alleged crime, the prosecution’s case against Charles Cotton would have been much weaker. There was no medical evidence that a rape had occurred, there was no physical evidence placing Charles Cotton inside Lee Jim’s home, and there was no clearly credible eyewitness testimony as to what occurred in Lee Jim’s home on the day of the alleged incident.
The government must prove that the error was harmless beyond a reasonable doubt, meaning that there is no reasonable possibility that the tainted evidence might have contributed to the jury’s verdict of guilty. Considering the weaknesses in the prosecution’s evidence, I do not believe the government has proven beyond a reasonable doubt that the unconstitutional admission of Bell’s statement was harmless. On the contrary, I think there clearly is a reasonable possibility that the tainted evidence might have made the difference in at least one juror’s vote and therefore might have contributed to the verdict of guilty.