11 So.3d 548 (2009)
STATE of Louisiana in the Interest of D.G.
No. 2008-CA-0938.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 2009.
Writ Denied June 5, 2009.
*550 Annette Roach, Louisiana Appellate Project, Lake Charles, LA, for Appellant, D.G.
Leon A. Cannizzaro, Jr., District Attorney, Brandi Dohre, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
*551 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE and Judge EDWIN A. LOMBARD).
JOAN BERNARD ARMSTRONG, Chief Judge.
On February 14, 2008, a Petition for Delinquency, was filed against D.G., a fourteen year-old juvenile, setting forth one charge against him of sexual battery under La. R.S. 14:43.1.[1]
D.G. appeared in court on February 20, 2008, requested and was appointed counsel from the Indigent Defender Board; he also denied the allegations in the Petition. Various motions were filed and answered, among them a Motion to Preclude Incompetent Testimony filed on April 24, 2008 on behalf of D.G. The motion was deferred to trial.
An adjudication hearing was held on May 14, 2008. Just before the end of the hearing the juvenile judge stated that:
The Court, at this time, adjudicates the juvenile delinquent to the crime of Sexual Battery. I sentence you to a period of incarceration with the Office of Youth Development for a period of two years.
At this point defense counsel interjected:
Your Honor, I would request that before you do a sentencing in this matter that we'd be allowed to submit evidence on behalf of the defendant.
The State then asked to have a chance to offer a victim[2] impact statement "before sentencing," to which the judge responded: "Not a problem." The judge went on to state that: "It's now scheduled for a victim impact statement and a dispositional date at the same time." Accordingly, the dispositional hearing was held on June 11, 2008, pursuant to which the juvenile judge imposed a disposition of three years with the Office of Youth Development, instead of the two years he contemplated at the original hearing, with a referral to the sexual predators counseling class. This appeal follows.
La. Ch.C. art. 883 requires the State to "prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition." This echoes the constitutional requirement that the State prove every element of the offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In evaluating whether the evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary *552 to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. Id. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. Id. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id.
Counsel for D.G. takes the position that the State failed to prove that there was a touching by D.G. of either the genitals or anus of the victim. The victim was not called as a witness, but was physically present in the courthouse and there was no physical or other impediment to calling him as a witness.
The record reflects that there was considerable testimony that D.G. requested the victim to perform oral sex upon him on one or more occasions, but there is no evidence that the victim acceded to any of these requests or that there was any genital contact, oral or otherwise. Mere requests for genital contact, without actual contact, are insufficient to meet the definition of sexual battery as set forth in La. 14:43.1. Therefore, D.G.'s adjudication cannot be sustained on the basis of an oral sexual battery. However, as hereinafter discussed, we find that the adjudication can be sustained on the basis of the juvenile judge's finding of anal contact.
Counsel for D.G. also complains that the State failed to introduce sufficient evidence to prove beyond a reasonable doubt that he committed a sexual battery upon the victim by anal contact.
The victim's aunt, who testified as the person to whom the victim made the "initial complaint of sexually assaultive behavior" (referred to as the "first reporter") under La. C.E. art. 801 D(1)(d), testified that the victim told her that D.G. was trying to put his "thing" in his "butt."
La. C.E. art. 801 provides in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
* * *
(d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
The first person to whom the victim made the "initial complaint of sexually assaultive behavior" may have been his eight-year old cousin, J. Therefore, D.G. contends that the hearsay exception testimony in La.C.E. art. 801(D)(1) hearsay exception for "initial complaint of sexually assaultive behavior" does not apply to the testimony of his aunt as she was not the person to whom the victim first reported the "sexually assaultive behavior" of D.G.
The State counters that the statement made by the victim to his aunt was one of initial complaint because implicit in La.C.E. art. 801(D)(1) hearsay exception for "initial complaint of sexually assaultive behavior" is the assumption that the initial complaint is made to an adult or other competent person.
In admitting the testimony of the victim's aunt as a "first reporter" the trial court reasoned that: "I believe that a first reporter is a responsible person that can, in fact, take steps [to further] the investigation or to preserve the safety of the *553 child. I'm going to rule that [an] 8-year-old child does not meet the definition of a first reporter as this [Court is] concerned." Neither the State nor D.G. cite any authorities in support of their respective positions on this issue, and this Court has located none. Therefore, we consider this to be a matter of first impression. In doing so we find that we are persuaded by the logic of the trial court's reasoning as quoted earlier in this same paragraph. Accordingly, we find no error in the ruling of the trial court allowing the testimony of the victim's aunt to be treated as an "initial complaint of sexually assaultive behavior."
The State also introduced a DVD of the interview Joan Verrett, a social worker at the Children's Advocacy Center, conducted with the victim. When asked whether anything happened, the victim said only that his uncle [D.G.] rubbed his private part on his butt. When asked to identify body parts on line drawings of full frontal and rear views of a young boy and a young girl he labeled as "private parts" both the pubic areas and the buttocks shown on both sets of pictures.
Counsel for D.G. contends that the statute requires that there be a touching of the anus and that a touching of the buttocks is not sufficient to constitute sexual battery under the statute, i.e., where the statute says "anus" it does not mean "buttocks." We agree. For example, Louisiana Revised Statute 14:283(B)(3) concerning the crime of video voyeurism refers separately to "anus" and the "cleft of the buttocks," and LSA-R.S. 26:90 concerning the commission of lewd acts on premises licensed to sell alcoholic beverages also refers to "anus" and "buttocks" separately. However, Dr. Scott Anthony Benton, the medical director of the Audrey Hepburn Children at Risk Evaluation Center as well as a clinical associate professor of pediatrics at both the LSU and Tulane Schools of Medicine, gave testimony based upon his medical examination of the victim that sufficiently supports the conclusion that there was anal contact.
D.G. contends that it was error to allow Dr. Benton to testify because his examination of the victim was for forensic purposes, not medical, at a time several months after the alleged incident or incidents for which D.G. was brought before the court below. Consequently, D.G. argues that the hearsay exception found in La. C.E. art. 803(4) for statements given in the course and scope of medical treatment and diagnosis does not apply.
Dr. Benton testified as to what the victim told him when he examined him. From the medical records it appears that the seven-year old the victim was referred to Children's Hospital by his mother and the New Orleans Police Department. Dr. Benton testified that the victim was referred to him by the Children's Hospital Emergency Room. The trial court allowed this as an exception to hearsay as it was told to him by the child in the course and scope of receiving medical treatment. C.E. art. 803(4). The attorney for D.G. objected, arguing that Dr. Benton was interviewing the victim as part of a forensic investigation and not for the purpose of medical treatment. As Dr. Benton explained:
It was relayed to me in obtaining medical history from the child that he said that [D.G.] attempted to have penile oral contact, as well as described actual penile anal contact.
We note that the trial judge was careful to sustain defense counsel's objections on those occasions when Dr. Benton's testimony appeared to stray beyond the scope of his medical examination of the victim for sexual assault.
*554 Over the objection of defense counsel, the trial court allowed Dr. Benton to refresh his memory by referring to the transcript of his taped interview with the victim Dr. Benton testified that his interviews with the victims of sexual assaults are audio recorded and transcribed in order to avoid any misinterpretations, i.e., it was prepared in the normal course of the medical examination and was used to refresh Dr. Benton's recollection at trial. Accordingly we find it is just as much a part of the medical record as any other document and was not improperly admitted.
Counsel for D.G. complains that the trial court erred in letting Dr. Benton offer opinion testimony as to whether the victim had been coached. It is clear from the record that the judge acknowledged that Dr. Benton had acted as an expert in cases such as the instant case. Moreover, the objection does not fairly characterize the nature of Dr. Benton's testimony regarding the possibility that the victim was coached. Dr. Benton did not express an opinion as to whether the victim was coached; he merely stated that he saw no evidence of coaching, "which is not necessarily the same as the converse that there was none, but I saw no evidence of it." He further elaborated by explaining that while he saw no evidence of coaching, "that doesn't exclude it absolutely." Accordingly, we find no error in allowing this testimony.
On direct examination, Dr. Benton, testified that the seven year old victim. told him that, on multiple occasions, D.G. would ask him to put his penis in his mouth or in his anus. Dr. Benton also testified that the victim told him that his uncle sniffed his "butt." He went on to testify that when asked what would happen next, the victim told him "that was it." When Dr. Benton questioned the victim further, the victim again said that other than sniffing my butt, D.G. did nothing. When asked if anyone ever put anything in where the poo-poo comes out, he at first responded, "No," but then immediately and spontaneously changed his answer to "Yes," before Dr. Benton had a chance to ask him another question. His next response was "[D.G.] Yes." Dr. Benton next asked the victim, "What did he put inside your behind?" The victim responded: "His private part." Shortly thereafter, the transcript of the interview shows the following questions and responses:
Q. Okay. Let's back up a bit. I asked you, has anybody put something in your behind where the poo-poo comes out? What did you say?
R. I said yes.
Q. And who did that?
R. [D.G.]
Dr. Benton confirmed this at the hearing in juvenile court. Dr. Benton testified that when he asked the victim whether "anybody put something in your behind where the poo-poo comes out, "The final answer I received was, [D.G.], yes."
Moreover, Dr. Benton testified that by the end of his interview with the victim he had concluded that:
It is clear in my mind that by the end of this, what he meant is what I summarized, that there was an ask and a request for penile oral contact, and there was actual penile anal contact.
This is the conclusion Dr. Benton wrote in his report. The transcript of the interview is entitled: "Transcription of Patient Medical History Taken for Evaluation Diagnosis and Treatment."
However, Dr. Benton admitted on re-cross examination that when asked that same question earlier in the same interview, the victim's first answer was "no." Dr. Benton explained that:

*555 It's well documented that developmentally early on when you're questioning children they may or may not be ready to discuss the issues that they're there for. They may be evasive of the answers, so you get an apparent inconsistency that later on as the report goes through they see how you respond to things you may develop more information. That's not unusual, and it gives the appearance of [apparent inconsistency.]
Our review of the transcript indicates that the juvenile judge accepted this explanation and we find no error based on the record in such a conclusion having been reached by the judge below. The testimony of the various witnesses concerning "butt" or "buttock" is not inconsistent with this conclusion when one considers that the victim could not be expected to speak with scientific precision of anatomical terms. To such a young child the "butt" would not exclude the anus. Therefore, the evidence referring to "butt," while not sufficient in itself to prove anal contact, does not contradict Dr. Benton's conclusion that there was anal contact.
Even in the criminal context, a relaxed evidentiary standard is applied in cases involving sex crimes against children. State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960 (where evidence of uncharged misconduct is admissible to show "lustful disposition"). A relaxed evidentiary standard has also been applied to minimize the effect of the harsh courtroom experience. Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); Michael H. Graham, The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 MINN. L. REV. 523, 558-60 (1988) (citing state statutes providing relief). The basis of the relaxation of the rules reflects a state policy favoring the interests of the child. Miller, 718 So.2d at 960; State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037.
Folse v. Folse, 98-1976, p. 13-14 (La.6/29/99), 738 So.2d 1040, 1047-1048.
Trial court rulings on the admissibility of evidence will not be overturned absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992). State v. Richardson, 97-1995 (La.App. 4 Cir. 3/3//99), 729 So.2d 114.
D.G. complains that he was denied his constitutional right to confront his accuser, the victim, because the victim never testified. D.G., in effect, contends that this assignment of error taints virtually all of the evidence against him, because virtually all of it is hearsay evidence consisting of what the victim told to various people concerning the sexually assaultive behavior. The record shows that the victim was available at the courthouse during the hearing below. D.G. takes the position that that is not adequate. D.G. contends that in order to satisfy the constitutional requirement of availability, the victim should have first been called by the State so that he could then be made available to D.G. for cross-examination.
Lowery v. Collins, 988 F.2d 1364 (5th Cir.1993) appears to concern this exact issue. If Lowery holds that merely having the juvenile victim available in court is insufficient to satisfy the accused's right of confrontation under facts that cannot be distinguished from those of this case, then we would be compelled to rule in favor of D.G. As both the State and D.G. disagree as to the meaning and applicability of Lowery, and as it involves a precise and narrow issue, the exact language used in Lowery is important. Therefore, we shall not attempt to paraphrase the critical passages in Lowery, but shall quote them as follows:

*556 On federal habeas, the State argues that inasmuch as the child-complainant was available in the courtroom and was found competent to testify, Lowery's constitutional right to confront the witnesses against him was not violated. Specifically, the State insists that Lowery's failure to call the child-complainant to the stand constituted a waiver of his Sixth Amendment right. The district court credited this argument, finding that because "the complaining witness was available to testify [,] Lowery was assured of his right to cross-examine the complaining witness."[FN20 omitted. Emphasis original.] The district court quoted from the pre-Craig, Supreme Court case of California v. Green[, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ] as support for the proposition that "`the Confrontation Clause is not violated by admitting declarant's out-of-court statements, as long as the declarant is testifying as a witness [Emphasis original.] and is subject to a full and effective cross-examination.'" [FN21 omitted.] By that we infer that the district court equated "available to testify" with actually "testifying as a witness and [being] subject to a full and effective cross-examination." This interpretation-advanced forcefully again by the State at oral argument to this court-is a conclusion of law which we review de novo. And when we do, we find that it is simply wrong.
The State would, and the district court did, impermissibly impose on the defendant the Catch-22, so styled by the TCCA in Long[ v. State, 742 S.W.2d 302 (Tex.Crim.App.1987) ],FN22 of either calling the child-complainant to the stand at the "risk [of] inflaming the jury against [himself]" or avoiding the risk of thus inflaming the jury at the cost of waiving his constitutional right to confront and cross-examine the key witness against him.FN23 As was recognized by the TCCA in Lowrey, this "no win" burden "unfairly requires the defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case."FN24
* * *
FN22. 742 S.W.2d at 320.
FN23. Lowrey v. State, 757 S.W.2d at 359.
FN24. 757 S.W.2d at 359.
* * *
In White [v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) ], the Supreme Court held that the admission of a hearsay statement of a four-year-old child declarant at trial did not violate the Confrontation Clause, even though the prosecutor did not put the child-complainant on the stand or seek a finding of unavailability.FN31 But the out-of-court statement in White was held to be admissible because it fell within two clearly established exceptions to the hearsay rule-spontaneous declaration and medical examination. As the evidence had been admitted under clear exceptions to hearsay, reliability of the testimony was not at issue.
FN31. 502 U.S. at 356, 112 S.Ct. at 743.
Lowery, 988 F.2d at 1369-1371.
We note the following crucial factors in Lowery: (1) The Lowery court felt that placing the defendant in the untenable position of calling the child witness-victim for cross-examination and risk inflaming the jury or, in the alternative, waiving his right to confrontation, was a choice that did not meet constitutional muster. The instant case involved a judge trial so there was no jury for the juvenile defendant to inflame had he chosen to call the victim to the stand. Therefore, D.G.'s constitutional *557 argument is not as compelling here as it was in Lowery.
Accordingly, we find that the victim was "available" for cross-examination by D.G., and that D.G. may not avail himself of the Lowery argument that he could not risk inflaming the jury by calling the victim to the stand; and, (2) Lowery stands for the proposition that clearly established exceptions to hearsay are not in violation of the confrontation clause of the Constitution. This is the real issue in this case.
The U.S. Fifth Circuit of Appeals quoted from and followed Lowery in Offor v. Scott, 72 F.3d 30 (5th Cir.1995):
We warned that Supreme Court precedent prevented a court from labeling error harmless just because "`it thinks the petitioner would have been convicted even if the constitutional error had not taken place.'" 996 F.2d at 773 (quoting Brecht v. Abrahamson, 507 U.S. 619, 642, 113 S.Ct. 1710, 1724, 123 L.Ed.2d 353 (1993) (Stevens, J., concurring)). Under Kotteakos[ v. U.S., 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ] and Lowery, the sufficiency of the non-tainted evidence, or the duplicative nature of the tainted evidence, is simply not the issue.
* * *
In the version of Lowery decided before Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), we observed that "[t]he tainted evidence had to have had a tremendous impact in the jury-it was, after all, a videotaped interview in which a little boy described and demonstrated with anatomically correct dolls the selfsame acts of molestation that Lowery was alleged to have perpetrated on the child." 988 F.2d at 1373. We concluded with the observation that the power of the tainted evidence was clear "when that evidence is compared to the only other basis for the conviction: physical evidence not tied to the defendant except by hearsay testimony." 988 F.2d at 1373. The jury may have heard more evidence of Offor's guilt in this case, but not so much more as to allow us to find that the tape had no substantial and injurious influence upon the jury's verdict.
The Confrontation Clause exists in part to keep criminal proceedings fair, and the admission of the videotape casts serious doubts on the fairness of Offor's trial. The jury heard evidence from defense witnesses that the victim was a troubled child, desperate for attention, who had previously fabricated allegations of sexual abuse against adults disciplining her. The jury was entitled to find this evidence unworthy of credence. This evidence, however, showed that the state ran at least two risks in calling the victim to the stand. The victim might change or alter her story, or concede that she had fabricated the entire incident. Alternatively, the victim might testify to incidents of sexual abuse so great in number and under such impossible circumstances so as to undermine her credibility to the jury. The videotape allowed the state to solve these problems neatly. The state succeeded in having the jury hear its version of the victim's story without running the risk that she might later undermine that version. The Confrontation Clause does not allow such neat solutions. Rather, it assures that cross-examination permits the kind of probing and testing that makes oral testimony reliable. That the state's purpose in using the videotape rather than a live witness was to protect the child does not change its effect.
Offor, 72 F.3d at 33-34.
As in Lowery, the Offor court was concerned about the potentially inflammatory *558 effect on the jury of having the defendant call the child victim to the stand. Again, as the instant case was a judge trial, this concern is not relevant. Moreover, in Offor there is no mention of the defendant being "available" in court as was the situation in the instant case. Therefore, Offor is not as factually relevant to the instant case as is Lowery.
We find that the concern expressed by the U.S. Eight Circuit Court of Appeals in Schaal v. Gammon, 233 F.3d 1103, 1106 (8th Cir.2000), pertaining "the risk [of] inflaming the jury," places it in the same category to that extent as Lowery and Offor, but for the same reason distinguishes it from the instant case where there was no jury.
Schaal also stands for the proposition that where the witness is available, as J.G. was in the instant case, that the prosecution may avail itself of established or reliable exceptions to hearsay.
Detective Coulon testified that he was told by the victim that in October of 2007, his uncle, D.G., pulled down his pants and rubbed his penis on his buttocks. On cross-examination, the detective clarified this by saying that the victim did not say penis, but instead said "private part." The detective also acknowledged that the victim denied that D.G. rubbed his "private part" between his buttock.
Counsel for D.G. complains about the lack of temporal specificity in what the victim told to Detective Coulon and others about the timing of the abuse. The Petition for Delinquency charges D.G. with sexual battery occurring "on or between JULY 1, 2007 AND OCTOBER 31, 2007[3]." However, Dr. Benton explained that at age seven children do not have the temporal sense to be specific as to date and time of a sexual assault. The juvenile judge apparently accepted this explanation as does this Court.
Detective Coulon's testimony as to what the victim told him was admitted by the trial court as a hearsay exception on the basis that it "was in the course and scope of his investigation to determine whether or not there was probable cause to make an arrest." We find no error in that finding. In D.G.'s original brief he raised a Lowery objection to Detective Coulon's hearsay testimony, i.e., he should not be compelled to call the child victim to the stand to attempt to refute Detective Coulon's testimony. However, as was explained previously in this opinion, Lowery does not apply to the facts of this case because this was not a jury trial. Therefore, we find no merit in this objection.
Counsel for D.G. contends that the admission of the videotape interview of the victim by Joan Verrett at the Child Advocacy Center also violates his confrontation clause rights in the Lowery sense. As explained above, Lowery does not apply to this case as long as a recognized hearsay exception is applicable. In the instant case La. Ch.C. art. 322 provides a "special exception to the hearsay rule allowing receipt of videotaped statements of the child's account," as long as the requirements set forth in La. Ch.C. art. 326 and 327 are met. Ms. Verrett gave credible uncontradicted testimony establishing that each of the requirements set forth in La. Ch.C. art. 326 and 327 were met. Therefore, we find that those requirements were met in this case and D.G. has presented no contrary argument. Accordingly, we find that the trial court did not err in allowing the admission of the videotape interview of the victim by Joan Verrett.
*559 In the interview with Ms. Verrett, the victim stated that he lived on the I-10 Service Road with his mother and brother. His aunt, testifying as the recipient of the first report of sexually assaultive behavior, testified that the victim told her that the sexually assaultive behavior took place at his mother's home, which she identified as being located in New Orleans East. The victim told Dr. Benton that he lived on Bell Street with his mother and brother, but that the sexually assaultive behavior took place at his home. All of the testimony is consistent that he was the victim of sexually assaultive behavior in his home and that the home was in the Parish of Orleans. The victim's aunt, was certainly in a position to give credible testimony as to the victim's home with his mother, and the aunt's testimony is consistent with the victim's interview with Ms. Verrett when he states that he lived on the I-10 Service Road. Therefore, the fact that a child of such tender years might have some confusion as to his home address is understandable. We find that the record sustains a finding that a reasonable fact finder could find beyond a reasonable doubt that the sexually assaultive behavior occurred in the victim's home on the I-10 Service Road in Orleans Parish as charged in the Petition for Delinquency.
Counsel for D.G. argues that responsive verdicts, such as attempt, are not permitted under the Children's Code. However, as D.G. was adjudicated delinquent on the charge of sexual battery rather than attempted sexual battery, and the record supports this finding, we find that this contention is not relevant and need not be addressed by this court at this time.
At the conclusion of the adjudication hearing the juvenile judge started to impose a disposition of two years incarceration with the Office of Youth Development for a period of two years. As noted near the beginning of this opinion, both the State and counsel for D.G. asked the judge to delay sentencing and the judge agreed. Accordingly, the dispositional hearing was postponed until June 11, 2008. At this subsequent hearing the judge imposed a disposition of three years and counsel for D.G. objected to the harsher disposition saying that "there's been no more aggravation that the Court has heard since having" originally imposed a disposition of two years. However, the juvenile judge took the position that he had not made a disposition at the first hearing and that after reviewing the record he felt that a three-year disposition was appropriate. We agree with the juvenile judge. Had the trial court felt that he had made a disposition at the first hearing there would have been no reason to grant the dispositional hearing of June 11, 2008. Therefore, there has been no increase in the severity of the disposition as there was no original disposition to be increased. The only disposition is the three-year one imposed at the June 11, 2008 hearing.
Counsel for D.G. also complains that the three-year disposition is excessive. However, D.G. cites no authority in support of this contention. Citing cases involving adult defendants, the State calls to our attention the following precepts: Trial courts enjoy broad discretion because they are in the best position to assess the aggravating and mitigating circumstances. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958. The trial judge's imposition of sentence should not be set aside as excessive absent manifest abuse of this discretion. State v. Davis, 449 So.2d 452, 453 (La.1984); State v. Forde, 482 So.2d 143, 145 (La.App. 4 Cir. 1986). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition *560 of pain and suffering and is grossly out of proportion to the severity of the crime. Davis, supra; State v. Trepagnier, 97-2427, p. 10 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. Because the trial court has broad discretion in imposing a sentence within statutory limits, a reviewing court can only set it aside if it is clearly excessive, rather than because another sentence might have been appropriate. Cook, supra, 95-2784, p. 3, 674 So.2d at 959; Trepagnier, supra, 97-2427, p. 10, 744 So.2d at 189. In imposing sentence, the trial judge need not articulate every aggravating and mitigating circumstance among the factors set forth in La.C.Cr.P. art. 894.1. Forde, supra. However, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. Davis, supra.
But this is a juvenile matter. La.C.Cr.P. art. 894.1 does not apply. State in the interest of T.L.V. (La.App. 2 Cir. 9/91/94), 643 So.2d 290; State in the Interest of Winstead, 385 So.2d 311 (La. App. 1 Cir.1980). However, La. Ch.C. art. 903 does apply and this Court finds that the record shows compliance with that code article. It is not required that the juvenile judge specially articulate the findings required. They may be adduced from the record. State in the interest of T.L.V., supra. Moreover, the nature and duration of a disposition of a felony-grade delinquent act are governed by La. Ch.C. art. 897, 897.1, 898 and 901.
In rendering his decision of disposition on D.G., the trial judge stated: "Now I've had an opportunity to review the record, to review the reports, consider the testimony, and to think about the impact on the 7-year-old [victim]." This, along with his other rulings and comments as shown in the transcript found in the record, reflects that the dispositional decision by the juvenile judge was a considered act consistent with the requirements of the Children's Code and not an act of whimsy. Based on the record before us, this Court cannot say that the juvenile judge failed to adhere to the requirement of La. Ch.C. art. 901 that he impose "the least restrictive disposition authorized by Articles 897 through 900 ... which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society."

DECREE
For the foregoing reasons, the adjudication of delinquency and the disposition are affirmed.
ADJUDICATION OF DELINQUENCY AND DISPOSITION AFFIRMED.
LOVE and LOMBARD, JJ., concur in the result.
NOTES
[1] La. 14:43.1 defines the crime of sexual battery as:

A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
[2] From the record it appears that the victim was D.G.'s seven year old nephew.
[3] Upper case letters original.